I. FACTUAL AND PROCEDURAL HISTORY
A. The Brady List
In late 2016, the Association counted among its members approximately 7,800 deputy sheriffs. The Department sent a letter to roughly 300 of those deputies, informing them that a review of "individual employees' personnel records" had "identified potential exculpatory or impeachment *326 information in your personnel file." Among other things, the letter served to "remind" deputies "about the existence of this material."
According to the letter, "[e]xamples of performance deficiencies" that qualify as potential Brady material "include, but are not limited to, founded administrative investigations involving violations of" any of nearly a dozen sections of the Department's Manual of Policy and Procedures. Those sections concern:
**240 (1) "Immoral Conduct"; (2) "Bribes, Rewards, Loans, Gifts, Favors"; (3) "Misappropriation of Property"; (4) "Tampering with Evidence"; (5) "False Statements"; (6) "Failure to make Statements and/or Making False Statements During Departmental Internal Investigations"; (7) "Obstructing an Investigation/Influencing a Witness"; (8) "False Information in Records"; (9) "Policy of Equality - Discriminatory Harassment"; (10) "Unreasonable Force"; and (11) "Family Violence." Notwithstanding the letter's claim that such violations were mere "[e]xamples of performance deficiencies" that might justify inclusion on the Brady list, other materials in the record suggest that the letter was only sent to deputies understood to have violated at least one of those enumerated policies.
The letter further advised deputies that, "in order to comply with our constitutional obligations," the Department is "required to provide the names of employees with potential exculpatory or impeachment material in their personnel file to the District Attorney and other prosecutorial agencies where the employee may be called as a witness." Later correspondence indicated that the deputy's employee number might also be provided. Consistent with that later correspondence, however, the initial letter stressed that "no portion of an investigation or contents of your file will be turned over to either the prosecution or the defense absent a court order." Deputies were also afforded an opportunity to object to their inclusion on the Brady list, by informing the *38 Department that "the deputy did not have a founded administrative investigation finding on one of the above policy violations" or that "any such founded investigation had been overturned in a settlement agreement or pursuant to an appeal."
B. Trial Court
As relevant here, the Association filed a petition for writ of mandate and a complaint seeking preliminary and permanent injunctive relief. It sought to prevent the Department from disclosing the identity of deputies on the Brady list absent compliance with Pitchess procedures. The Department agreed to postpone disclosure until the court ruled on the request for a preliminary injunction. ( Association for Los Angeles Deputy Sheriffs v. Superior Court (2017) 13 Cal.App.5th 413, 421, 221 Cal.Rptr.3d 51 ( Deputy Sheriffs ).)[1]
The trial court granted the request in part. It agreed with the Association that the identity of peace officers on the Brady list was confidential under the Pitchess statutes because the list linked officers to disciplinary action reflected in their personnel records. The court further agreed that Brady did not authorize disclosure of the list at the Department's discretion, unconnected to any criminal case. Over the Association's objection, however, the court ruled that the Department was "not ... enjoined from disclosing the fact that an individual Deputy Sheriff is listed on the Sheriff's Department's 'Brady List' when a *327 criminal prosecution is pending and the Deputy Sheriff at issue is involved in the pending prosecution as a potential witness."
C. Court of Appeal
The Association petitioned the Court of Appeal for a writ of mandate and requested an immediate stay. The court granted the stay request, effectively expanding the trial court's injunction to prevent disclosure of officer identities (outside of the Pitchess process) without regard to whether a prosecution was pending. After issuing an order to show cause, a divided panel of the Court of Appeal granted the writ petition in pertinent part. ( Deputy Sheriffs , supra , 13 Cal.App.5th at p. 448, 221 Cal.Rptr.3d 51.)
The Court of Appeal observed that the Pitchess statutes make confidential certain personnel records and information obtained from those records. ( Deputy Sheriffs , supra , 13 Cal.App.5th at p. 433, 221 Cal.Rptr.3d 51.) Echoing the trial court, the *39 Court of Appeal reasoned that "[n]otifying an outside agency, even a prosecutor's office, that a deputy has an administratively founded allegation of misconduct ... cannot be characterized as **241 anything other than disclosing information obtained from the peace officer's personnel file." ( Id. , at p. 435, 221 Cal.Rptr.3d 51.) The appellate court did not agree, however, that disclosure could be made whenever an officer on the Brady list was a potential witness in a pending case. The court thus ordered the trial court "to strike from the injunction any language" permitting disclosure of "the identity of any individual deputy on the ... Brady list to any individual or entity outside the [Department], even if the deputy is a witness in a pending criminal prosecution, absent a properly filed, heard, and granted Pitchess motion, accompanied by a corresponding court order." ( Id. , at p. 448, 221 Cal.Rptr.3d 51.)
Justice Grimes dissented in pertinent part. She concluded that a Pitchess motion is not "required to transfer, between members of the prosecution team, the identities of officers involved in a pending prosecution who may have Brady materials in their personnel records." ( Deputy Sheriffs , supra , 13 Cal.App.5th at p. 449, 221 Cal.Rptr.3d 51 (conc. & dis. opn. of Grimes, J.).)
D. Enactment of Senate Bill 1421
We granted review. While this matter was pending before us, Senate Bill No. 1421 (2017-2018 Reg. Sess.) (Senate Bill 1421) amended one of the statutes relevant to the question presented. (See Stats. 2018, ch. 988, § 2, eff. Jan. 1, 2019; see also § 832.7(a).) We obtained supplemental briefing regarding the significance of the enactment.
II. BRADY AND PITCHESS
We begin by describing Brady and Pitchess , as an understanding of each is necessary to understanding the relationship between them. (See, e.g., City of Los Angeles v. Superior Court (2002) 29 Cal.4th 1, 7-10, 124 Cal.Rptr.2d 202, 52 P.3d 129 ( City of Los Angeles ).)
A. Brady
The Fourteenth Amendment to the federal Constitution prohibits states from denying any person due process of law. ( U.S. Const., 14th Amend.) This guarantee of due process affords criminal defendants the right to a fair trial, "impos[ing] on States certain duties consistent with their sovereign obligation to ensure 'that "justice shall be done." ' " ( Cone v. Bell (2009) 556 U.S. 449, 451, 129 S.Ct. 1769, 173 L.Ed.2d 701.)
*328 Prosecutors, as agents of the sovereign, must honor these obligations. (See Kyles , supra , 514 U.S. at p. 438, 115 S.Ct. 1555 ;
*40 Mooney v. Holohan (1935) 294 U.S. 103, 112-113, 55 S.Ct. 340, 79 L.Ed. 791 (per curiam ).) A prosecutor must refrain from using evidence that the prosecutor knows to be false. ( Mooney , at pp. 112-113, 55 S.Ct. 340 ; see also Pyle v. State of Kansas (1942) 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214.) A prosecutor must correct false evidence "when it appears." ( Napue v. Illinois (1959) 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217.) And, under Brady , a prosecutor must disclose to the defense evidence that is "favorable to [the] accused" and "material either to guilt or to punishment." ( Brady , supra , 373 U.S. at p. 87, 83 S.Ct. 1194.)
"For Brady purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness." ( People v. Zambrano (2007) 41 Cal.4th 1082, 1132, 63 Cal.Rptr.3d 297, 163 P.3d 4 ; see also United States v. Bagley (1985) 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 ; Giglio , supra , 405 U.S. at pp. 154-155, 92 S.Ct. 763.) Evidence is material " 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " ( Kyles , supra , 514 U.S. at pp. 433-434, 115 S.Ct. 1555.) Evaluating materiality requires consideration of the collective significance of the undisclosed evidence ( Kyles , at p. 436, 115 S.Ct. 1555 ), as well as "the effect of the nondisclosure on defense investigations and trial strategies" ( Zambrano , at p. 1132, 63 Cal.Rptr.3d 297, 163 P.3d 4 ). (See also Kyles , at p. 439, 115 S.Ct. 1555 ; Bagley , at p. 701, 105 S.Ct. 3375 (dis. opn. of Marshall, J.).) "A reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[ ] confidence in the **242 outcome of the trial.' " ( Smith v. Cain (2012) 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571.)
This materiality standard applies both after judgment, when evaluating whether Brady was violated, and before judgment, when evaluating whether evidence favorable to the defense must be disclosed. (See Kyles , supra , 514 U.S. at pp. 437-438, 115 S.Ct. 1555 ; United States v. Agurs (1976) 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342.) Because it may be difficult to know before judgment what evidence will ultimately prove material, "the prudent prosecutor will resolve doubtful [ Brady ] questions in favor of disclosure." ( Agurs , at p. 108, 96 S.Ct. 2392 ; see also Kyles , at pp. 438-439, 115 S.Ct. 1555.) Statutory and ethical obligations may require even more. (See, e.g., Pen. Code, § 1054.1, subds. (d) - (e) [statutory disclosure obligation]; Rules Prof. Conduct, rule 3.8(d) & com. [3] [ethical disclosure obligation].)
B. Pitchess
Without relying on Brady , our decision in Pitchess "recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is *41 relevant to the defendant's ability to defend against a criminal charge." ( People v. Mooc (2001) 26 Cal.4th 1216, 1219, 114 Cal.Rptr.2d 482, 36 P.3d 21 ( Mooc ).) "In 1978, the Legislature codified the right" and defined "which officer records are subject to Pitchess discovery." (Galindo v. Superior Court (2010) 50 Cal.4th 5.) "The statutory scheme is set forth in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7, and 832.8." ( Mooc , at p. 1226, 114 Cal.Rptr.2d 482, 36 P.3d 21.) These Pitchess statutes *329 "reflect[ ] the Legislature's attempt to balance a litigant's discovery interest with an officer's confidentiality interest." ( Riverside County Sheriff's Dept. v. Stiglitz (2014) 60 Cal.4th 624, 639, 181 Cal.Rptr.3d 1, 339 P.3d 295 ( Stiglitz ).)
The threshold question under the Pitchess statutes is whether the information requested is confidential. (See Pen. Code, § 832.7, subds. (a) - (b).) If it is, the information may generally be disclosed only "by discovery pursuant to" Evidence Code sections 1043, 1045, and 1046. ( § 832.7(a) ; see Johnson , supra , 61 Cal.4th at p. 712, fn. 2, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Requests for disclosure are ordinarily made in criminal cases but may also arise in connection with civil or quasi-criminal proceedings. (See § 832.7(a) ; see also, e.g., Stiglitz , supra , 60 Cal.4th at p. 628, 181 Cal.Rptr.3d 1, 339 P.3d 295 [appeal of employee discipline]; City of San Jose v. Superior Court (1993) 5 Cal.4th 47, 53, 19 Cal.Rptr.2d 73, 850 P.2d 621 ( City of San Jose ) [juvenile wardship proceeding].)
A party seeking disclosure under the Pitchess statutes must file a written motion and give notice to the agency with custody and control of the records. ( Evid. Code, § 1043, subd. (a).) Among other things, the motion must identify the officer or officers at issue ( id. , § 1043, subd. (b)(1) ); describe "the type of records or information" desired ( id. , § 1043, subd. (b)(2) ); and, by affidavit, show "good cause for the discovery or disclosure sought" ( id. , § 1043, subd. (b)(3) ).[2]
This "good cause" requirement has two components. First, the movant must set forth "the materiality" of the information sought "to the subject matter involved in the pending litigation." ( Evid. Code, § 1043, subd. (b)(3).) The function of this requirement is to "exclude[ ] requests for officer information that are irrelevant to the pending charges." ( Warrick v. Superior Court (2005) 35 Cal.4th 1011, 1021, 29 Cal.Rptr.3d 2, 112 P.3d 2.) If the movant shows that the request is "relevant to the pending charges, and explains how, the materiality requirement will be met." ( *42 Johnson , supra , 61 Cal.4th at p. 721, 206 Cal.Rptr.3d 606, 377 P.3d 847 ; see also Richardson v. Superior Court (2008) 43 Cal.4th 1040, 1048-1049, 77 Cal.Rptr.3d 226, 183 P.3d 1199 **243 ["The materiality standard is met if evidence of prior complaints is admissible or may lead to admissible evidence"].) If information is "material" within the meaning of Brady , it is necessarily material "to the subject matter involved in" a criminal prosecution. ( Evid. Code, § 1043, subd. (b)(3) ; see City of Los Angeles , supra , 29 Cal.4th at p. 10, 124 Cal.Rptr.2d 202, 52 P.3d 129.)
Second, the "good cause" requirement obliges the movant to articulate "a 'reasonable belief' that the agency has the type of information sought." ( City of Santa Cruz , supra , 49 Cal.3d at p. 84, 260 Cal.Rptr. 520, 776 P.2d 222 ; see also Evid. Code, § 1043, subd. (b)(3).) This belief "may be based on a rational inference" ( Johnson , supra , 61 Cal.4th at p. 721, 206 Cal.Rptr.3d 606, 377 P.3d 847 ); for example, that because officers allegedly used excessive force in a pending case, "other complaints of excessive force 'may have been filed' " ( City of Santa Cruz , at p. 90, 260 Cal.Rptr. 520, 776 P.2d 222 ; see also id. , at p. 93, fn. 9, 260 Cal.Rptr. 520, 776 P.2d 222 ). Certainly, a movant is not required *330 " 'to allege with particularity the very information' " sought. ( Johnson , at p. 721, 206 Cal.Rptr.3d 606, 377 P.3d 847, quoting Memro , supra , 38 Cal.3d at p. 684, 214 Cal.Rptr. 832, 700 P.2d 446.) At the least, the requisite "reasonable belief" exists when a movant declares that the agency from which the movant seeks records has placed the officer at issue on a Brady list. (See ibid . )
The function of the "good cause" requirement at this stage of the Pitchess process is not to determine whether documents will be disclosed to the movant; it is to determine whether information will be reviewed in camera. Accordingly, the burden imposed by the requirement "is not high." ( Johnson , supra , 61 Cal.4th at p. 720, 206 Cal.Rptr.3d 606, 377 P.3d 847 ; see City of Santa Cruz , supra , 49 Cal.3d at p. 84, 260 Cal.Rptr. 520, 776 P.2d 222 [requirement is designed to ensure "the production for inspection of all potentially relevant documents"].)
When a court determines that a movant has made a showing sufficient to justify in camera inspection, "the custodian of records should bring to court all documents 'potentially relevant' to the ... motion." ( Mooc , supra , 26 Cal.4th at p. 1226, 114 Cal.Rptr.2d 482, 36 P.3d 21.) "[I]f the custodian has any doubt whether a particular document is relevant, [the custodian] should present it to the trial court." ( Id. , at p. 1229, 114 Cal.Rptr.2d 482, 36 P.3d 21.) The court must examine those documents "in conformity with [Evidence Code] section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other[s as that person] is willing to have present)." ( City of Santa Cruz , supra , 49 Cal.3d at p. 83, 260 Cal.Rptr. 520, 776 P.2d 222 ; see Evid. Code, §§ 915, 1045, subd. (b).) To facilitate appellate review, the court should make a record of what it has examined. (See People v. Townsel (2016) 63 Cal.4th 25, 69, 201 Cal.Rptr.3d 19, 368 P.3d 569 ; see also Mooc , at p. 1229-1230, 114 Cal.Rptr.2d 482, 36 P.3d 21 ; see generally People v. Gaines (2009) 46 Cal.4th 172, 92 Cal.Rptr.3d 627, 205 P.3d 1074.) Questioning the custodian of records under oath regarding which documents were produced helps both to facilitate *43 appellate review and to ensure that information is not withheld from the movant improperly. (See Mooc , at p. 1229 & fn. 4, 114 Cal.Rptr.2d 482, 36 P.3d 21.)
After conducting in camera review, a court has discretion regarding which documents, if any, it will disclose to a movant. (See, e.g., People v. Myles (2012) 53 Cal.4th 1181, 1209, 139 Cal.Rptr.3d 786, 274 P.3d 413.) Evidence Code section 1045 guides the exercise of that discretion, requiring the court to "exclude from disclosure" certain information ( id. , § 1045, subd. (b)(1)-(3) ) and to "consider" whether the movant could obtain certain other information without disclosure of individual personnel records ( id. , § 1045, subd. (c) ). (See also Evid. Code, § 1047 ; Stiglitz , supra , 60 Cal.4th at pp. 641-642, 181 Cal.Rptr.3d 1, 339 P.3d 295.) Notwithstanding these provisions, however, the court must disclose information that is favorable to the defense and "material" within the meaning of Brady . ( Johnson , supra , 61 Cal.4th at p. 720, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
Finally, the Pitchess statutes protect information that is disclosed to a movant from **244 further dissemination. "The court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer records requested pursuant to [Evidence Code] Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." ( Evid. Code, § 1045, subd. (e) ; see generally *331 Chambers v. Superior Court (2007) 42 Cal.4th 673, 68 Cal.Rptr.3d 43, 170 P.3d 617 ; Alford v. Superior Court (2003) 29 Cal.4th 1033, 130 Cal.Rptr.2d 672, 63 P.3d 228.) Upon a proper motion by the custodian or the officer at issue, the court may also "make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression." ( Evid. Code, § 1045, subd. (d).)
III. ANALYSIS
Familiar principles of statutory interpretation guide our analysis of the Pitchess statutes. (See, e.g., People v. Castillolopez (2016) 63 Cal.4th 322, 329, 202 Cal.Rptr.3d 703, 371 P.3d 216 [describing those principles].) In particular, we bear in mind that the Pitchess statutes "must be viewed against the larger background of the prosecution's" Brady obligation "so as not to infringe the defendant's right to a fair trial." ( Mooc , supra , 26 Cal.4th at p. 1225, 114 Cal.Rptr.2d 482, 36 P.3d 21.) As discussed below, these principles point toward two main conclusions. First, the Department's Brady list is confidential to the extent it was derived from confidential records. Second, the Department does not violate that confidentiality by sharing with prosecutors the identity of potential witnesses on the Brady list.
*44 A. The Department's Brady List Is Confidential to the Extent That Officers Were Included on the List Because of Information Obtained from Confidential Records
To the extent the Department placed officers on the Brady list based on information found in confidential records, the identities of those officers were "obtained from" the records and are thus also confidential. ( § 832.7(a).) Under legislation enacted while this litigation was pending, however, certain records related to officer misconduct are not confidential. (See Pen. Code, § 832.7, subd. (b) ( section 832.7(b) ).) Because such records are not confidential, information "obtained from" those records is also not confidential. ( § 832.7(a).) With one possible exception not relevant here (see id. , § 832.7, subd. (b)(8) ), the Pitchess statutes do not prevent the Department from disclosing - to anyone - the identity of officers whose records contain that nonconfidential information.
1. Section 832.7(a) creates three categories of confidential information
In pertinent part, section 832.7(a) instructs that, "[e]xcept as provided in subdivision (b), the personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to [Penal Code] Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (Italics added.) This provision does not merely restrict disclosure in criminal and civil proceedings; it creates a generally applicable condition of confidentiality and recognizes an exception for "discovery pursuant to" certain portions of the Evidence Code. (Ibid. ; see Copley Press, Inc. v. Superior Court (2006) 39 Cal.4th 1272, 1285-1286, 48 Cal.Rptr.3d 183, 141 P.3d 288 ( Copley Press ).)
Absent an exception, the confidentiality afforded by section 832.7(a) extends to three categories of information. (See Copley Press , supra , 39 Cal.4th at p. 1284, 48 Cal.Rptr.3d 183, 141 P.3d 288.) First, it reaches "personnel records of peace officers and custodial officers." ( § 832.7(a).) Among other things, this category shields certain records that relate to "[e]mployee ... discipline" ( Pen. Code, § 832.8, subd. (a)(4) ) or certain "[c]omplaints, or investigations *332 of complaints, ... pertaining to the manner in which [the employee] performed [the employee's] duties" ( id. , § 832.8, subd. (a)(5) ). (See also **245 Long Beach Police Officers Assn. v. City of Long Beach (2014) 59 Cal.4th 59, 71-72, 172 Cal.Rptr.3d 56, 325 P.3d 460 ( Long Beach ); Commission on Peace Officer Standards & Training v. Superior Court (2007) 42 Cal.4th 278, 291, 64 Cal.Rptr.3d 661, 165 P.3d 462 ( Commission on POST ).) *45 The second category of confidential information encompasses "records maintained by any state or local agency pursuant to [Penal Code] Section 832.5." ( § 832.7(a).) Section 832.5 "requires '[e]ach department or agency in [California] that employs peace officers [to] establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies ....' " ( Copley Press , supra , 39 Cal.4th at p. 1283, 48 Cal.Rptr.3d 183, 141 P.3d 288, quoting Pen. Code, § 832.5, subd. (a)(1).) Such "[c]omplaints and any reports or findings relating" to them "shall be retained for a period of at least five years," and must generally be "maintained either in the peace or custodial officer's general personnel file or in a separate file." ( Pen. Code, § 832.5, subd. (b) ; see also id. , § 832.5, subds. (c), (d)(1).)
The third and final category of confidential information is "information obtained from" the prior two types of records. ( § 832.7(a) ; see Commission on POST , supra , 42 Cal.4th at p. 289, 64 Cal.Rptr.3d 661, 165 P.3d 462.) "In its ordinary sense, to obtain information means to come into possession of it." ( International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court (2007) 42 Cal.4th 319, 344, 64 Cal.Rptr.3d 693, 165 P.3d 488, italics removed.) Thus, the phrase "information obtained from" certain records ( § 832.7(a) ) "is most reasonably read to encompass information that was acquired from" those records (Internat. Federation , at p. 344, 64 Cal.Rptr.3d 693, 165 P.3d 488 ).
2. Senate Bill 1421 excludes certain information from section 832.7(a) 's provision of confidentiality
Senate Bill 1421 amended Penal Code section 832.7. The plain text of the amended statute excludes certain information from the confidentiality afforded by section 832.7(a). As amended, subdivision (a) applies "[e]xcept as provided in subdivision (b)." Subdivision (b) declares in turn that, "[n]otwithstanding ... any other law," certain "peace officer or custodial officer personnel records and records maintained by any state or local agency shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act." ( Pen. Code, § 832.7, subd. (b)(1), italics added.) It follows that if subdivision (b) deems records "not ... confidential," they are not "confidential" under subdivision (a). And if records are "not ... confidential" because of subdivision (b), it would be nonsensical to conclude that subdivision (a) renders "information obtained from" those nonconfidential records "confidential." Thus, if subdivision (b) deems a record nonconfidential, the record, or information obtained from it, is not confidential.
Senate Bill 1421 deems three types of records nonconfidential. First, records "relating to the report, investigation, or findings" of an incident in which an officer (i) discharged a firearm at a person or (ii) used force against *46 a person resulting in death or great bodily injury. ( Pen. Code, § 832.7, subd. (b)(1)(A).) Second, records "relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency" *333 that an officer "engaged in sexual assault involving a member of the public." ( Id. , § 832.7, subd. (b)(1)(B)(i).) And third, "[a]ny record relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence." ( Id. , § 832.7, subd. (b)(1)(C) ; see also id. , § 832.7, subd. (b)(2)-(4).) Any portion of a Brady list based on these types of records is not confidential, and section 832.7(a) does not restrict dissemination of such information.
It is true that Senate Bill 1421 does not "affect the discovery or disclosure of information contained in a peace or custodial officer's personnel file pursuant to Section 1043 of the Evidence Code." ( **246 Pen. Code, § 832.7, subd. (g).) Nor does it "supersede or affect the criminal discovery process outlined in Chapter 10 (commencing with [Evidence Code] Section 1054) of Title 6 of Part 2, or the admissibility of personnel records pursuant to subdivision (a), which codifies the court decision in Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305." ( Id. , § 832.7, subd. (h).) But these provisions are beside the point. It may be that Senate Bill 1421 does not expand the set of information that a criminal defendant is entitled to receive through the Pitchess process, an issue on which we need take no position here. For present purposes, it is enough to say that even if Senate Bill 1421 does not increase the amount of information that a defendant can compel an agency to disclose, the bill, by making certain records nonconfidential, reduces the amount of information that agencies are forbidden from disclosing voluntarily.
We do not suggest that nonconfidential records must be fully disclosed, at any time, under the California Public Records Act. As amended, Penal Code section 832.7 contemplates that it may be appropriate for an agency to redact records ( id. , § 832.7, subd. (b)(5)-(6) ) or to delay disclosure of records to avoid interference with certain investigations or enforcement proceedings ( id. § 832.7, subd. (b)(7) ). Moreover, separate and apart from any confidentiality, Penal Code section 832.7, subdivision (b)(8) instructs that "[a] record of a civilian complaint, or the investigations, findings, or dispositions of that complaint, shall not be released pursuant to this section if the complaint is frivolous, as defined in Section 128.5 of the Code of Civil Procedure, or if the complaint is unfounded." Thus, our conclusion that records described in section 832.7(b) are not "confidential"
*47 ( § 832.7(a) ) does not mean that they are invariably open for public inspection over the agency's objection.[3]
With this revised statutory scheme in mind, we turn to the question whether the Department's Brady list is confidential.
3. The record does not support a conclusion that the Brady list is nonconfidential
Putting subdivision (b) aside, there is no serious question that the Department reviewed "the personnel records of peace officers" when creating the Brady list. ( § 832.7(a).) The parties do not dispute that the deputies included on the *334 list are "peace officers." (Ibid. ) Nor is there any doubt that the Department created its list by reviewing "the personnel records of" those officers. (Ibid. ) The Department's initial letter to deputies explained that they were being contacted because a review of "personnel records" "identified potential exculpatory or impeachment information in your personnel file." Later correspondence clarified that deputies were contacted "due to a prior FOUNDED allegation of misconduct involving the Manual of Policies and Procedures (MPP), i.e.[,] a sustained finding that reflects moral turpitude, untruthfulness, or bias." This phrasing appears to refer to the statutory definition of " '[s]ustained,' " which "means a final determination ..., following an investigation ... that the actions of the peace officer or custodial officer were found to violate law or department policy." ( Pen. Code, § 832.8, subd. (b) ; see also id. , § 832.8, subd. (c) [" 'Unfounded' means that an investigation clearly establishes that the allegation is not true"].) Given this record, we have no reason to doubt that the Department created the Brady list by reviewing, at the least, personnel records "relating to ... [¶] ... [e]mployee ... discipline." ( Id. , § 832.8, subd. (a)(4) [defining personnel records].)
This conclusion entails another: The identities of officers on the Brady list constitute "information obtained from" "the personnel records of peace officers." ( § 832.7(a).) The Brady list is a catalog of officers with a particular kind of discipline-related information in their personnel file. It was derived from information in those files. It follows that, barring the applicability of an exception, the Pitchess statutes render confidential the identities of officers on the Brady list. To **247 hold otherwise would mean that section 832.7(a) affords the Brady list no protection at all.
An amicus curiae brief contends that the phrase "information obtained from these records" ( § 832.7(a) ) "could reasonably be interpreted to refer *48 only to information in the records, and not to the mere fact that certain information may exist." Thus, the argument continues, the Department's "generic" notification that " 'there may be Brady material in the officer's personnel records,' " is not a disclosure of "information obtained from" the records ( § 832.7(a) ).
We disagree. Based on the Department's explanation of how the Brady list at issue in this case was assembled (see ante , pt. I.A), the Department's disclosure that there "may" be Brady material in an officer's personnel records is, in effect, a disclosure that the officer has been found to have committed misconduct. This is not a "generic" disclosure merely because the misconduct could have been one of several kinds of misconduct, nor because evidence of the misconduct might not be "material" within the meaning of Brady in a particular case. (Cf. Copley Press , supra, 39 Cal.4th at p. 1297, 48 Cal.Rptr.3d 183, 141 P.3d 288 [ section 832.7(a) "is designed to protect, among other things, 'the identity of officers' subject to complaints"].)
Moreover, information is no less "obtained from" confidential records merely because it is abstracted before it is disclosed. As relevant here, Penal Code Section 832.7, subdivision (d) instructs that, "notwithstanding" the confidentiality created by subdivision (a), "a department or agency that employs peace or custodial officers may disseminate data regarding the number, type, or disposition of complaints (sustained, not sustained, exonerated, or unfounded) made against its officers if that information is in a form which does not identify the individuals involved." ( Id. , § 832.7, subd. (d).) This exception would be unnecessary if providing information about *335 confidential records categorically fell outside of the "information obtained from" provision. ( § 832.7(a).)
In light of Senate Bill 1421, however, some of the records reviewed by the Department may not be confidential. (See, e.g., Pen. Code, § 832.7, subd. (b)(1)(C).) If the records are not confidential, then information "obtained from" those records is also not confidential. The record on appeal in this case was not developed with Senate Bill 1421 in mind. Given the many grounds that may have given rise to a deputy's inclusion on the Brady list, we cannot say that the list was derived entirely from records rendered nonconfidential by Senate Bill 1421.[4]
Nor can we say that a Brady list that includes both confidential and *49 nonconfidential information melds into a single, nonconfidential whole. It is true that when a Brady list includes both confidential information and nonconfidential information, an officer's presence on the list does not necessarily communicate confidential information about that officer. In such a situation, one cannot infer from the officer's presence on the list that there is impeachment information in the officer's confidential records. (Cf. Long Beach , supra , 59 Cal.4th at p. 73, 172 Cal.Rptr.3d 56, 325 P.3d 460 ["disclosing the names of officers involved in various shootings" was permissible, as it "would not imply that those shootings resulted in disciplinary action against the officers, and it would not link those names to any confidential personnel matters or other protected information"]; Commission on POST , supra , 42 Cal.4th at p. 299, 64 Cal.Rptr.3d 661, 165 P.3d 462 [names and employment dates of officers not confidential, in part because that information "does not involve the identification of an individual as the officer involved in an incident that was the subject of a complaint or disciplinary investigation"].) But this argument reflects too narrow a view of the confidentiality afforded by the Pitchess statutes. When a Brady list is created based on review of confidential records, information is still unambiguously "obtained from" those records. ( § 832.7(a).) It would be odd indeed to conclude that the Legislature intended to sacrifice the confidentiality of one officer's records **248 merely because the officer was listed alongside others whose records were not confidential.
Further, because this argument focuses on whether someone can infer information about confidential records from the fact that an officer is on the Brady list, it appears to require one of two dubious approaches. It could be that disclosure of the fact that an officer is on the Brady list is permissible so long as the list is not based entirely on confidential information. That, after all, would be enough to sever the inference that if an officer is on the list, there must be evidence of discipline in the officer's confidential file. But if that is correct, then a Brady list may be created based on almost entirely confidential information, plus one officer whose misconduct is not confidential. We doubt the Legislature intended that result. Alternatively, it might be necessary to determine whether there is a sufficient mix of confidential and nonconfidential information such that it is genuinely unclear on what basis an officer was included on the Brady list. But that line seems challenging to administer - and, again, unmoored from the statutory text, which concerns "information obtained from" confidential records.
Because we cannot say that the Brady list at issue in this case is entirely nonconfidential, *336 and because partial nonconfidentiality would not strip the remainder of the list of its confidential status, we next consider whether the Department may disclose confidential information on its Brady list to prosecutors. *50 B. The Department May Share Even Confidential Portions of Its Brady List with Prosecutors
Our conclusion that portions of the Department's Brady list may be confidential raises the further question whether sharing alerts based on such information with prosecutors would be a violation of confidentiality. We conclude that the confidentiality created by the Pitchess statutes does not forbid the limited disclosure to prosecutors at issue in this case.
1. Section 832.7(a) permits the Department to share Brady alerts with prosecutors
As noted, section 832.7(a) instructs that certain information is "confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." We made clear in Copley Press that it is the condition of confidentiality that restricts information sharing, not the "shall not be disclosed" provision. (See Copley Press , supra , 39 Cal.4th at p. 1285, 48 Cal.Rptr.3d 183, 141 P.3d 288 ; see also Johnson , supra , 61 Cal.4th at pp. 713-714, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Regardless, any limitation on "disclos[ure]" raises essentially the same question as deeming information "confidential" ( § 832.7(a) ): With whom, if anyone, may the Department share confidential information?
The statutory text alone provides no clear answer to this question. "In common usage, confidentiality is not limited to complete anonymity or secrecy. A statement can be made 'in confidence' even if the speaker knows the communication will be shared with limited others, as long as the speaker expects that the information will not be published indiscriminately." ( Department of Justice v. Landano (1993) 508 U.S. 165, 173, 113 S.Ct. 2014, 124 L.Ed.2d 84 ; see also Food Marketing Institute v. Argus Leader Media (2019) 588 U.S. ----, 139 S.Ct. 2356, 204 L.Ed.2d 742 [ part III.A].) So, for example, it is hard to imagine that the term "confidential" would categorically forbid one employee of a custodian of records, tasked with maintaining personnel files, from sharing those records with another employee assigned to the same task. Put differently, deeming information "confidential" creates insiders (with whom information may be shared) and outsiders (with whom sharing information might be an impermissible disclosure). The text of the Pitchess statutes does not clearly indicate that prosecutors are outsiders, forbidden from receiving confidential Brady alerts.[5]
**249 *51 Viewing the Pitchess statutes "against the larger background of the prosecution's [ Brady ] obligation" ( Mooc , supra , 26 Cal.4th at p. 1225, 114 Cal.Rptr.2d 482, 36 P.3d 21 ), we instead conclude that the *337 Department may provide prosecutors with the Brady alerts at issue here without violating confidentiality.
There can be no serious doubt that confidential personnel records may contain Brady material. An officer may provide important testimony in a criminal prosecution. Confidential personnel records may cast doubt on that officer's veracity. Such records can constitute material impeachment evidence. (See, e.g., Giglio, supra , 405 U.S. at pp. 154-155, 92 S.Ct. 763.) These are not close questions.
Because confidential records may contain Brady material, construing the Pitchess statutes to permit Brady alerts best "harmonize[s]" Brady and Pitchess . ( Deputy Sheriffs , supra , 13 Cal.App.5th at p. 450, 221 Cal.Rptr.3d 51 (conc. & dis. opn. of Grimes, J.).) Brady imposes on prosecutors "a duty to learn of any favorable evidence known to the others acting on the government's behalf in [a] case, including the police." ( Kyles , supra , 514 U.S. at p. 437, 115 S.Ct. 1555.) Prosecutors are deemed constructively aware of Brady material known to anyone on the prosecution team and must share that information with the defense. (See In re Brown (1998) 17 Cal.4th 873, 879, 72 Cal.Rptr.2d 698, 952 P.2d 715.) In this context, construing the Pitchess statutes to cut off the flow of information from law enforcement personnel to prosecutors would be anathema to Brady compliance.
Indeed, to interpret "confidential" as forbidding the sharing of information with prosecutors would do more than forbid the formal Brady - list-and-alert practice at issue here. Even without formal procedures, conscientious prosecutors have conferred with law enforcement agencies to identify confidential files that may contain impeachment material. (See, e.g., Johnson , supra , 61 Cal.4th at p. 707, 206 Cal.Rptr.3d 606, 377 P.3d 847 [agency created Brady list in the face of " 'unnecessary paperwork and personnel costs' " caused by " '[r]epetitive requests by the District Attorney that the [Police] Department check employee personnel files of Department employees who may be witnesses"].) If "confidential" prevents formal procedures for sharing information with prosecutors, it prevents informal tips as well.
Of course, no one suggests that the Pitchess statutes completely prevent prosecutors from accessing confidential personnel records. Section 832.7(a) includes an exception for "investigations ... concerning the conduct of peace officers or custodial officers ... conducted by ... a district attorney's office, *52 or the Attorney General's office." And prosecutors may file Pitchess motions as appropriate. But the "investigations" exception ( § 832.7(a) ) does not apply merely because "[a] police officer" is "a witness in a criminal case" ( Johnson , supra , 61 Cal.4th at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847 ). And although the showing required for a Pitchess motion to trigger in camera review "is not high" ( Johnson , at p. 720, 206 Cal.Rptr.3d 606, 377 P.3d 847 ), neither is it imaginary. Without Brady alerts, prosecutors may be unaware that a Pitchess motion should be filed - and such a motion, if filed, may not succeed. Thus, interpreting the Pitchess statutes to prohibit Brady alerts would pose a substantial threat to Brady compliance.
It would also put deputies in a precarious position. The Fourteenth Amendment underlying Brady imposes obligations on states and their agents - not just, derivatively, on prosecutors. Law enforcement personnel are required to share Brady material with the prosecution. (See, e.g., Carrillo v. County of Los Angeles (9th Cir. 2015) 798 F.3d 1210, 1219-1223 & fn. 12.) The harder it is for prosecutors to access *338 that material, the greater the need for deputies to volunteer it.
The Association's contrary view that " Brady relates only to the prosecutor" and that " Brady ... does not impose obligations on **250 law enforcement" is distressing and wrong. The prosecution may bear ultimate responsibility for ensuring that necessary disclosures are made to the defense (see In re Brown , supra , 17 Cal.4th at p. 881, 72 Cal.Rptr.2d 698, 952 P.2d 715 ), but that does not mean law enforcement personnel have no role to play. This is not to imply that Brady alerts are a constitutionally required means of ensuring Brady compliance; only that disclosure of Brady material is required, and that Brady alerts help to ensure satisfaction of that requirement.
The Association further disputes that confidential personnel records may contain Brady material. It argues that "when a law enforcement agency maintains information about a peace officer in [the officer's] personnel file, it is acting in an administrative, not an investigative, capacity, and such information is not within the purview of the prosecutor's duty under Brady ."
This argument rests on a logical error. To be sure, although the federal Constitution imposes a duty on states to afford defendants a fair trial, a prosecutor is not responsible for disclosing all information known to any part of a state. Instead, if an "agency ... has no connection to the investigation or prosecution of the criminal charge against the defendant," the agency is not part of "the prosecution team," and "the prosecutor does not have the duty to search for or to disclose" "information possessed by [that] agency." ( In re Steele (2004) 32 Cal.4th 682, 697, 10 Cal.Rptr.3d 536, 85 P.3d 444.) But it does not follow that information in an officer's confidential personnel file categorically falls outside the Brady duty to disclose. Even if one assumes *53 that a law enforcement agency is not a member of the prosecution team when acting in its capacity as a custodian of records - a proposition Steele does not establish - it may be that others, who clearly are on the prosecution team, are aware of the existence and content of those records. A prosecutor, for example, may know from a prior Pitchess motion that a confidential file contains Brady information regarding an officer involved in a pending prosecution. Moreover, the correspondence sent to deputies in this case served to "remind" them about information in their records, reflecting the fact that an officer will often (if not always) be aware of the contents of the officer's own confidential file. Thus, even assuming that custodians are not necessarily part of the prosecution team, it does not follow that confidential personnel records are categorically unknown to the members of that team.[6]
The Association also suggests that confidential records fall outside the Brady duty to disclose because that duty extends only "to information obtained during an investigation about a criminal matter against a defendant." (Italics added.) This, too, is mistaken. What matters for Brady purposes is what the prosecution team knows, not how the prosecution team knows it. Suppose, for example, that a prosecutor is personally aware (based on an earlier case) that a key witness in a pending prosecution is a habitual liar who has been repeatedly convicted of perjury. To say that the prosecutor need not disclose that information *339 merely because it was not "obtained during" investigation of the defendant's case would be irreconcilable with the right to a fair trial underlying Brady ; it would "cast[ ] the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." ( Brady , supra , 373 U.S. at p. 88, 83 S.Ct. 1194 ; cf. City of San Jose , supra , 5 Cal.4th at p. 57, 19 Cal.Rptr.2d 73, 850 P.2d 621 [noting People's concession that Brady required disclosure, to defendants charged with battery on police officers, of the fact that an officer had been disciplined pursuant to a complaint of excessive force].)
To be clear, we do not suggest that permitting Brady alerts completely resolves the tension between Brady and the Pitchess statutes. Not all departments maintain Brady lists. And nothing guarantees that a Brady list will reflect all information that might prove "material" in each particular case. ( Brady , supra , 373 U.S. at p. 87, 83 S.Ct. 1194 ; see ante , pt. I.A.) But when a department **251 seeks to transmit a Brady alert to prosecutors, allowing the department to do so mitigates the risk of a constitutional violation. With Brady in mind (see *54 Mooc , supra , 26 Cal.4th at p. 1225, 114 Cal.Rptr.2d 482, 36 P.3d 21 ), the term "confidential" ( § 832.7(a) ) must be understood to permit such alerts.[7]
2. Johnson does not require a contrary conclusion
The Court of Appeal relied on our decision in Johnson to reach a contrary conclusion. We decline to extend that decision to this context.
In Johnson , we rejected the view that prosecutors "may always review the confidential personnel records of police officers who are witnesses in a criminal case to determine whether the records contain Brady material." ( Johnson , supra , 61 Cal.4th at p. 712, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Most notably, we reasoned: "[ Section 832.7(a) ] states that police officer personnel records are 'confidential.' It permits disclosure by use of the Pitchess procedures but otherwise provides only one exception to the confidentiality requirement - the exception for investigations. This exception indicates that the Legislature considered the range of situations in which prosecutorial need justifies direct access to peace officer personnel records, and it decided that those situations should be limited to 'investigations or proceedings concerning the conduct of peace officers or custodial officers' [citation], and does not extend to this context." ( Johnson , at pp. 713-714, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
We acknowledge the argument that this analysis applies to Brady alerts. Brady alerts communicate information obtained from confidential records. That information, like the underlying records, is "confidential." ( § 832.7(a).) And nothing in section 832.7(a) - including the investigations exception - explicitly declares that different kinds of confidential information should be treated differently. (See also Johnson , supra , 61 Cal.4th at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847 ["prosecutors, as well as defendants, must comply with the Pitchess procedures if they seek information from confidential personnel records"].)
That said, there is no question that our decision in Johnson was based on an understanding that Brady alerts were permissible. We viewed Brady alerts as so "laudabl[e]" ( *340 Johnson , supra , 61 Cal.4th at p. 721, 206 Cal.Rptr.3d 606, 377 P.3d 847 ) that we attached to our opinion the order "establish[ing] department procedures for Brady disclosure of materials in employee personnel files" ( id. , at pp. 706-707, 206 Cal.Rptr.3d 606, 377 P.3d 847 ). Moreover, when construing section 832.7(a), we reasoned that "permitting prosecutors routine access to personnel records is not necessary to protect defendants' due process rights to obtain potentially exculpatory evidence," relying on our later discussion of Brady alerts. ( Johnson , at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847 ; see also ibid. ["as discussed post "].) To now hold that Johnson 's interpretation of *55 "confidential" forbids Brady alerts would be to read our opinion as announcing an interpretation that both: (i) depends on the legality of Brady alerts; and yet (ii) implies that such alerts are unlawful. Precedent cannot compel a result if it points toward a self-defeating conclusion.
Nor is the relationship between the term "confidential" and the investigations exception beyond debate. ( Johnson , supra , 61 Cal.4th at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847.) Johnson inferred that because there is an exception to confidentiality for investigations, the Pitchess statutes otherwise limit investigators' (specifically, prosecutors') access to "confidential" information. (See id. , at pp. 713-714, 206 Cal.Rptr.3d 606, 377 P.3d 847.) But an exception aimed at investigations need not imply anything about whether investigators can view confidential material; for example, the exception could concern prosecutors' ability to share information with others when an investigation is ongoing. Moreover, even if the investigations exception does imply that prosecutors lack unlimited access to confidential records during **252 ordinary criminal cases, the exception could be understood to set a floor on prosecutorial access, rather than, as in Johnson , a ceiling. We need not embrace either of these interpretations to conclude that Johnson 's approach is not compelled by the statutory text - and should not be reflexively extended without considering "defendants' due process rights." ( Johnson , at p. 714, 206 Cal.Rptr.3d 606, 377 P.3d 847.)
In any event, even if the investigations exception is the only basis on which prosecutors may directly access underlying confidential records without a Pitchess motion, it does not follow that the Department is forbidden to transmit the Brady alerts at issue in this case. The Pitchess statutes reflect a balance between "a litigant's discovery interest" and "an officer's confidentiality interest." ( Stiglitz , supra , 60 Cal.4th at p. 639, 181 Cal.Rptr.3d 1, 339 P.3d 295.) Although the statutes may shield the fact that an officer has been disciplined from disclosure to the public at large, the mere fact of discipline, disclosed merely to prosecutors, raises less significant privacy concerns than the underlying records at issue in Johnson .
For these reasons, we decline to extend Johnson 's conclusion regarding "direct access to peace officer personnel records" to forbid the Brady alerts at issue here. ( Johnson , supra , 61 Cal.4th at p. 713, 206 Cal.Rptr.3d 606, 377 P.3d 847.) The Department may share this limited information, for the limited purpose of ensuring Brady compliance, with the limited class of persons (i.e., prosecutors) with a particularized need to know. (See ante , pt. III.A.)
IV. CONCLUSION AND DISPOSITION
The question presented in this case concerns whether the Department may share confidential Brady alerts with prosecutors. We do not address *56 whether it would violate confidentiality for a prosecutor to share an alert with the defense. (See *341 Johnson , supra , 61 Cal.4th at p. 722, 206 Cal.Rptr.3d 606, 377 P.3d 847.) And because this case concerns only Brady alerts, it provides no occasion to revisit whether prosecutors may directly access underlying records, or perhaps a subset of those records. (See Pen. Code, § 832.8, subd. (a)(4) ["discipline"], (5).) To resolve the question presented, it is enough to hold that the Department does not violate section 832.7(a) by sharing with prosecutors the fact that an officer, who is a potential witness in a pending criminal prosecution, may have relevant exonerating or impeaching material in that officer's confidential personnel file.
We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.
We Concur:
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.
GROBAN, J.

The Association sought relief against several other individuals or entities, including then-Sheriff Jim McDonnell and the County of Los Angeles. For ease of reference, and because these real parties in interest are similarly situated, we refer to the Department throughout.

The affidavit may be executed by an attorney based on information and belief; personal knowledge is not required. (See Garcia v. Superior Court (2007) 42 Cal.4th 63, 74, 63 Cal.Rptr.3d 948, 163 P.3d 939 ; see also City of Santa Cruz v. Municipal Court (1989) 49 Cal.3d 74, 86, 260 Cal.Rptr. 520, 776 P.2d 222 (City of Santa Cruz ); People v. Memro (1985) 38 Cal.3d 658, 676, 214 Cal.Rptr. 832, 700 P.2d 446 (Memro ).)

We express no view regarding whether an agency "release[s]" records concerning frivolous or unfounded civilian complaints "pursuant to this section" when it shares them only with a prosecutor's office. (Pen. Code, § 832.7, subd. (b)(8).)

We express no view concerning whether Senate Bill 1421 affects the confidentiality of records that existed before the legislation's effective date.

If anything, the recent amendment to section 832.7(a) tends to indicate that the condition of confidentiality is meant to shield information from the public's eyes - not from the eyes of government officials who may need that information to satisfy a constitutional obligation. (See Pen. Code, § 832.7, subd. (b)(1) [certain records "shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act"]; cf. Copley Press , supra , 39 Cal.4th at p. 1285, 48 Cal.Rptr.3d 183, 141 P.3d 288 [Pen. Code, § 832.7, subds. (c) -(d), "specify circumstances under which information may be released to the general public and the scope of information that may be released"].)

We need not hold that all information known to officers is necessarily within the scope of the Brady duty. For now, it is enough to say that records connected to officers' discipline cannot be categorically excluded from that duty.

To permit Brady alerts is not to require that Pitchess motions be supported by such alerts; there may be good cause for in camera inspection even if officers have been omitted from a Brady list maintained by their department.