Filed 9/20/21  P. v. Stojsich CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JEFFREY JOVON STOJSICH,

    Defendant and Appellant.

E074739

(Super.Ct.No. FWV1403479)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Conditionally affirmed and remanded with directions.

The Law Office of Christopher Nalls and Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity A. Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jeffrey Jovon Stojsich killed a "snitch" and was convicted of murder.  He appeals, contending that because the victim was someone

1

whose snitching helped put Stojsich's brother in prison, the killing was personally motivated, and thus he lacked the specific intent necessary for a gang enhancement under Penal Code section 186.22, subdivision (b). Stojsich also requests that we review the materials the trial court considered in camera pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), wherein Stojsich sought discoverable personnel records of a peace officer who testified as a street gang expert at trial. The trial court did not disclose any records as a result of the *Pitchess* motion.

We affirm the gang enhancement but cannot conduct a *Pitchess* review at this time. It is apparent that our record does not include all the documents that the trial court considered during the *Pitchess* motion. We therefore remand for the limited purpose of allowing the trial court to hold an additional hearing to settle the record, after which we may determine whether the trial court abused its discretion in refusing to disclose any records.[1]

## I. BACKGROUND

### A. *Factual History*

On August 26, 2014, Stojsich and a friend named John Rodriguez went to a Circle K convenience store to pick up cigarettes and other items. When they arrived, they saw Jeremy Stroud and his wife Danielle White sitting outside on a curb. After greeting one another, Stroud said he and White were looking for crystal meth, and Rodriguez said he could supply some later that day.

---

[1] Undesignated statutory references are to the Penal Code.

2

When Stojsich and Rodriguez returned to Stojsich's home, they and others began conversing about Stroud. Stojsich had stated then and other times that Stroud had "snitched" on Stojsich's older brother Robert Eddie some time ago (specifically, that Stroud had testified against Eddie), which led to Eddie being incarcerated. Because of that, Stojsich said Stroud "had to go," which Rodriguez understood as meaning that Stroud needed to be killed.

Stojsich and Rodriguez left to go meet Stroud and White later that day. While driving to a gas station, Stojsich and Rodriguez saw Stroud and White walking on the street. Stroud and White got into the vehicle, and Stojsich and Rodriguez drove them to another person's house, where Rodriguez sold Stroud the crystal meth. Afterward, the group drove around for what "seemed like a long time" to Rodriguez. During that time, Stroud told Stojsich that Stojsich "had it all wrong [with] what happened with his brother."

Stojsich and Rodriguez drove Stroud and White to a school parking lot. According to Rodriguez's testimony at trial, Stroud and White agreed to be dropped off at the school parking lot, but Stojsich and Rodriguez had an "ulterior motive," which was to "harm" Stroud. Stojsich, Rodriguez, and Stroud exited the car, and Stojsich and Stroud went toward the trunk while Rodriguez went toward the front. Because the car's child lock was engaged, White could not get out. According to Rodriguez, Stojsich and Stroud began "getting aggressive." Stojsich held Stroud in a chokehold and stabbed him in the neck and face. Rodriguez opened White's door, took her hand, punched her in the

face, and then kicked her repeatedly while she was on the ground, calling her and Stroud snitches. Stroud ultimately died at the hospital from the wounds.

*B. Gang Testimony*

At trial, Sergeant Brad Bonnet testified as an expert on criminal street gangs. Bonnet opined that Stojsich, Rodriguez, and Eddie were all members of a gang called the West End Peckerwoods.[2] Bonnet stated that "[o]ne of the biggest rules in a specific street gang is that you don't tell on another member. This doesn't just apply to members of the gang. This applies to essentially everybody."

Rodriguez testified that a Peckerwood is a foot soldier for two white prison gangs, the Aryan Brotherhood and the Nazi Low Riders. According to Rodriguez, a Peckerwood who took a snitch's "wing" (i.e., stopped them from breathing by "any means possible") would be "praised by the higher ups" in the organizations both in prison and on the streets.

When presented with hypothetical facts based on Stroud's murder, Bonnet opined that the hypothetical killing would be for the benefit of and in association with a criminal street gang. Bonnet stated, among other things, that the participation of a second member of the same gang showed the hypothetical killing was in association with a criminal street gang. According to Bonnet, having a second member from the same gang participate meant additional assistance in accomplishing the murder, and also that each could rely on the other not to "say anything about the murder."

---

[2] On appeal, Stojsich does not challenge Bonnet's opinion that each of these individuals is a member of the West End Peckerwoods gang.

4

*C. Charges and Verdict*

Although both Stojsich and Rodriguez were charged with murder and other crimes, Rodriguez agreed to testify against Stojsich as part of a plea bargain, and only a gang enhancement under section 186.22, subdivision (b) attached to the murder count is at issue here.[3]

Following the first phase of a bifurcated trial, the jury found Stojsich guilty of second degree murder. It also found the personal use of a deadly and dangerous weapon allegation true. Following the second phase of trial, the jury found the gang enhancement allegation true. The trial court sentenced Stojsich to 15 years to life for the murder and one year for the personal use enhancement.

## II. DISCUSSION

Stojsich contends that there was insufficient evidence for the jury to find that he had the "'specific intent to promote, further, or assist in any criminal conduct by gang members,'" which the gang enhancement requires, because he murdered Stroud out of

---

[3] Stojsich and Rodriguez were each charged with murder (§ 187, subd. (a); count 1), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 2), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3). Gang enhancements pursuant to section 186.22, subdivision (b)(1)(C) were alleged as to counts 1 and 2 for both Stojsich and Rodriguez, and personal use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)) was alleged as to count 1 for Stojsich. The People also alleged two prison prior enhancements pursuant to section 667.5, subdivision (b) for both Stojsich and Rodriguez. Rodriguez testified during trial that he had entered into a plea where he would serve 17 years for the charges in exchange for his testimony against Stojsich. During trial, the trial court dismissed counts 2 and 3 on the People's motion, and it also dismissed the prison prior enhancements due to a change in law.

personal revenge.[4] Stojsich also requests that we review the files the trial court considered in camera as part of his *Pitchess* motion relating to the gang expert's personnel records. We reject the contention and remand for further proceedings on the *Pitchess* motion.

### A. Gang Enhancement

"There are two prongs to the enhancement [under section 186.22, subdivision (b)]. [Citation.] First, the prosecution is required to prove that the underlying felonies were 'committed for the benefit of, at the direction of, or in association with any criminal street gang.'" (*People v. Rios* (2013) 222 Cal.App.4th 542, 561.) This first prong is not at issue here, so there is no question that the murder was "committed for the benefit of, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1).) "Second," however, "there must be evidence that the crimes were committed 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.'" (*People v. Rios*, *supra*, 222 Cal.App.4th at p. 561.) Stojsich contends there was insufficient evidence as to this second prong. The main thrust of his argument is that he

---

[4] Stojsich's gang enhancement is attached to a felony punishable by life in prison, so the punishment imposed by the gang enhancement is that his minimum parole eligibility term is 15 years. (§ 186.22, subd. (b)(5).) However, as our Supreme Court observed in *People v. Lopez* (2005) 34 Cal.4th 1002, second degree murder has a minimum parole eligibility term of 15 years even without a gang enhancement, and thus the gang enhancement "ha[s] no practical effect . . . for second degree murderers." (*Id.* at p. 1009, citing § 190, subd. (a).) This might suggest that the legality of the gang enhancement is a moot point. However, we consider the issue because the true finding under section 186.22, subdivision (b)(5) "'is a factor that may be considered . . . when determining a defendant's release date, even if it does not extend the minimum parole date per se.'" (*Lopez*, *supra*, at p. 1009.)

was only "mad about—and wanted revenge for—the fate of a family member, not his gang." We find no merit in the contention.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment" and "presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence." (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).) "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding." (*Id.* at p. 60.)

In *Albillar*, our Supreme Court discussed the specific intent prong of the gang enhancement in the context of crimes committed with other gang members. (*Albillar*, *supra*, 51 Cal.4th at p. 68.) It held that "if substantial evidence establishes that the defendant intended to and did commit the charged felony *with known members of a gang*, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Ibid.*, italics added.) Applying *Albillar*, we find sufficient evidence for the specific intent prong.

Significantly, at no point in his opening or reply brief does Stojsich challenge Bonnet's opinion regarding Stojsich and Rodriguez's gang membership or any finding the jury may have made based on Bonnet's opinion. Thus, there is no dispute that Stojsich and Rodriguez are known gang members.

Since *Albillar*, cases have suggested that the mere presence of another known gang member is not enough. (See *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1361 [specific intent prong of gang enhancement not satisfied where there was no evidence that juvenile ward "acted in concert with his companions" or "that appellant's companions even saw what happened"].) In attempting to distinguish *Albillar* here, Stojsich appears to rely on this rule; he contends, for instance, that "Rodriguez did not participate in the stabbing; he did not directly assist in the stabbing of Stroud." This seems to be an argument that Rodriguez's involvement was too attenuated. But whether or not Rodriguez "directly assist[ed]" in the *stabbing*, here there was sufficient evidence that Stojsich and Rodriguez acted in concert as to the charged felony, the *murder*. Rodriguez testified that he understood Stojsich wanted Stroud dead, that the "ulterior motive" was to "harm" Stroud, and that he himself knocked White to the ground while Stroud was being stabbed in the neck and face, preventing her from helping him. Accordingly, although mere physical presence may not be enough in some instances, Rodriguez's active involvement in the crime was sufficient here.

Under *Albillar*, Stojsich's argument that he acted out of personal or family interests is largely irrelevant. When focusing on the specific intent prong, "[t]here is no further requirement that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist

8

criminal conduct by *gang members*. (*Albillar*, *supra*, 51 Cal.4th at p. 67.)  On the record before us, there is ample—indeed, undisputed—evidence that Stojsich did just that.[5]

B.  Pitchess *Review*

For many years "our trial courts have entertained what have become known as *Pitchess* motions, screening law enforcement personnel files in camera for evidence that may be relevant to a criminal defendant's defense." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225 (*Mooc*).)  *Pitchess* "and its statutory progeny are based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." (*Id.* at p. 1227.)  After a party seeking files under *Pitchess* demonstrates good cause for the discovery and the trial court conducts an in camera review, "a court has discretion regarding which documents, if any, it will disclose to a movant." (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 43.)  We review for abuse of discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

---

[5] We briefly note, for completeness, that for similar reasons there also was sufficient evidence that the murder was "committed *for the benefit of*, at the direction of, or in association with any criminal street gang." (§ 186.22, subd. (b)(1), italics added) The evidence of Rodriguez's participation in the murder also establishes that the murder was committed in association with a criminal street gang. (See *Albillar*, *supra*, 51 Cal.4th at pp. 61-62 [crimes were committed in association with a criminal street gang because the "[d]efendants not only actively assisted each other in committing these crimes, but their common gang membership ensured that they could rely on each other's cooperation in committing these crimes and that they would benefit from committing them together"].)

9

Here, before trial in 2019, the trial court noted in open court that it had conducted an in camera review following an "informal *Pitchess* motion" by Stojsich with regard to Bonnet, the prosecution's criminal street gang expert. The trial court stated that it had "reviewed all personal[6] records belonging to" Bonnet and that there was "nothing to disclose" to Stojsich in response to the motion. The sealed transcript from that in camera review indicates that the trial court reviewed several types of documents and records relating to Bonnet.

While briefing was underway in this court, Stojsich requested that the record on appeal be augmented to include the *Pitchess* materials the trial court reviewed. We granted the request and ordered the trial court to hold a hearing to "'settle the record'" if the confidential materials were not already available in the trial court's file. (See *Mooc*, *supra*, 26 Cal.4th at p. 1231 [appellate court may remand case "to the trial court with directions to hold a hearing to augment the record with the evidence the trial court had considered in chambers when it ruled on the *Pitchess* motion"].)

The trial court held such a hearing in 2021, certified that the materials presented before it then were the records it reviewed at the hearing in 2019, and had those confidential materials sent to this court.

In reviewing the record, it has become apparent to us that not all of the materials the trial court reviewed in 2019 were resubmitted at the 2021 hearing, and the trial court's certification of the record was erroneous. At the 2019 hearing, for which we have a

---

**6** We presume the trial court said "personnel" instead of "personal," or at least that it intended to.

10

sealed transcript, the trial court diligently noted what each type of document that was contained in each presented folder was as it reviewed Bonnet's personnel file.  (See *Mooc*, *supra*, 26 Cal.4th at p. 1229 [trial court may "state for the record what documents it examined"].)  Most of the types of documents the trial court noted for the record in 2019, however, are nowhere to be found in the materials this court received following the 2021 hearing.

Without all of the documents the trial court reviewed in 2019, we are unable to provide Stojsich meaningful appellate review of the trial court's decision not to disclose any documents relating to Bonnet.  A "complete and accurate appellate record is needed to effectuate the rights to meaningful appellate review."  (*People v. Townsel* (2016) 63 Cal.4th 25, 68 (*Townsel*).)

In *Townsel*, our Supreme Court held that the lack of a full *Pitchess* record on appeal was harmless error, despite the impairment such a circumstance would have for review.  (*Townsel*, *supra*, 63 Cal.4th at pp. 69-71.)  However, it did so only after finding that the materials had been "lost" despite "exhaustive efforts" to locate them.  (*Id.* at pp. 68-69.)  Our situation is different, so we decline to decide whether the omission of the complete file here would constitute harmless error.  Specifically, we have no reason to believe that the missing materials are irretrievably lost, only that they were not resubmitted for the 2021 hearing.

Accordingly, we remand with instructions for the trial court to hold a second hearing to settle the record so that the remaining files it reviewed in 2019 may be resubmitted, certified, and sent to this court.

## III.  DISPOSITION

The conviction is conditionally affirmed.  The matter is remanded to the superior court for the limited purpose of holding a second hearing to settle the record.  The clerk of the superior court, appeals division, shall, on or before 35 days from the date of the hearing, transmit to this court in a confidential envelope a copy of the certified items received by the superior court at such hearing, at which time this court will take further action.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
Acting P. J.

FIELDS
J.

12