Filed 5/31/24  P. v. Johnson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LEROY JOHNSON,<br><br>Defendant and Appellant. | F083895<br><br>(Super. Ct. No. F09904296)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Defendant Leroy Johnson, along with Neko Wilson, Dawn Singh, Christopher Butler, Andrew Jones, and Jose Reyes, was arrested in connection with the July 2009 murders of Gary and Sandra DeBartolo. Following defendant's arrest, he was linked to a separate robbery and physical attack on Philip N., which occurred a week before the murders.[1] For the crimes committed against the DeBartolos, defendant was charged with capital murder. In 2021, the jury convicted him of two counts of murder with robbery and burglary special circumstance findings and a multiple-murder special circumstance finding. (Pen. Code, §§ 187, subd. (a)/189, 190.2, subd. (a)(3), (17)(A), (G).)[2] For the crimes committed against Philip, the jury convicted defendant of attempted murder with personal infliction of great bodily injury (GBI), second degree robbery with personal infliction of GBI, and mayhem. (§§ 664/187, subd. (a), 211/212.5, 203, 12022.7, subd. (a).)

In a bifurcated proceeding between the guilt and penalty phases, the trial court found the three prior serious or violent felony conviction allegations true within the meaning of the "Three Strikes" law.[3] (§§ 667, subds. (a)(1), (b)–(i), 1170.12, subds. (a)–(d).)

At the conclusion of the penalty phase, the jury returned two verdicts of life without the possibility of parole (LWOP) for the murders of the DeBartolos. (§ 190.3.)

---

[1] In accordance with California Rules of Court, rule 8.90(b)(4), we refer to Philip by his first name; no disrespect is intended. All further references to rules are to the California Rules of Court.

[2] All further statutory references are to the Penal Code.

[3] Defendant was convicted of two counts of robbery in 1985 (§§ 667.5, subd. (c)(9), 1192.7, subd. (c)(1)(19)), and an assault with a finding that he personally used a deadly or dangerous weapon in 1998 (§ 1192.7, subd. (c)(1)(23)). Because defendant suffered the robbery convictions in the same case, the trial court found he had only two prior convictions for the purpose of imposing prior serious felony conviction enhancements. (§ 667, subd. (a)(1); *People v. Wiley* (1995) 9 Cal.4th 580, 592.)

In 2022, defendant was sentenced to two consecutive terms of LWOP for murder, with two additional 10-year terms for the prior felony convictions enhancements, and a consecutive term of 27 years to life for attempted murder, with an additional 10-year term for the prior serious felony conviction enhancements and three-year term for personal infliction of GBI. Under section 654, the court imposed and stayed terms of 25 years to life for robbery, with an additional 10 years for the prior conviction enhancements and three years for the GBI enhancement, and 25 years to life for mayhem, with an additional 10 years for the prior conviction enhancements.

Defendant filed a timely notice of appeal raising three categories of claims. First, defendant requests we conduct an independent review of the proceedings related to his *Pitchess*[4] motions and the trial court's determinations that there was no information subject to disclosure. Second, defendant seeks remand for resentencing in light of Senate Bill Nos. 567 and 81, which amended sections 1170 and 1385, respectively.[5] Defendant was sentenced one month after Senate Bills 567 and 81 took effect, and he claims that the trial court was unaware of the scope of its sentencing discretion under sections 1170 and 1385 as recently amended, necessitating remand for resentencing. (*People v. Salazar* (2023) 15 Cal.5th 416, 425 (*Salazar*); accord, *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).)[6] With respect to section 1385, he also claims that even if the court was aware of the recent change in the law, we should adhere to *Walker*'s view that the statute creates a rebuttable presumption in favor of dismissal where, as here, there are mitigating circumstances, and find that under *Walker*, the court abused its discretion in declining to strike the enhancements. (*People v. Walker* (2022) 86 Cal.App.5th 386, 396

---

[4]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[5]    Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567); Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81).

[6]    *Salazar* was decided between the filing of defendant's opening brief and the People's respondent's brief.

(*Walker*), review granted Mar. 22, 2023, S278309.) Defendant argues that trial counsel's request to strike the enhancements and request for leniency at sentencing was sufficient to preserve this claim of error, but if we find the claim forfeited for failure to object, he is entitled to remand for resentencing because trial counsel rendered ineffective assistance of counsel (IAC). Finally, defendant requests we order correction of the abstract of judgment to reflect the $1,000 restitution fine imposed under section 1202.4, subdivision (b), was stayed and to remove the reference to a GBI enhancement attached to his mayhem conviction.

The People do not object to defendant's request for an independent review of the *Pitchess* proceedings or to the correction of the clerical errors identified in the abstract of judgment. However, they disagree that the record affirmatively reflects the trial court was unaware of the scope of its sentencing discretion under sections 1170 and 1385 as amended, and, if error is assumed, they contend it is harmless because it is clear from the record that remand would be an idle act. (*Salazar, supra*, 15 Cal.5th at p. 431; *Gutierrez, supra*, 58 Cal.4th at p. 1391.) They also contend defendant forfeited his claim that the trial court otherwise abused its sentencing discretion under section 1385, and they dispute that trial counsel's failure to object to the court's sentencing choice constituted IAC.

As discussed herein, we conducted an independent review of the *Pitchess* proceedings and conclude the trial court followed the proper procedure, created an adequate record of the in camera hearing, and did not abuse its discretion in determining there was no information subject to disclosure. Additionally, we reject defendant's claims that the record reflects the trial court was unaware of the scope of its sentencing discretion under sections 1170 and 1385 as amended by Senate Bills 567 and 81, and, therefore, he is not entitled to remand under *Gutierrez* and *Salazar*. Further, we conclude that his claim the court abused its discretion under section 1385 even if it was aware of the change to the law was forfeited for failure to object and we reject his IAC claim. Accordingly, we affirm the judgment, but we direct the trial court to issue an amended

4.

minute order and abstract of judgment to reflect that the $1,000 restitution fine imposed was stayed and that there is no GBI enhancement attached to the mayhem conviction.

<strong>FACTUAL SUMMARY[7]</strong>

## I.      Attack on Philip N.

In July 2009, Philip N. was in Fresno on a business trip. As he returned to his motel room from breakfast, defendant began following him and talking to him. When Philip unlocked the door to the room, defendant forced his way inside. Defendant demanded money and when Philip resisted, defendant broke his nose and dislocated his jaw. After Philip threw some cash on the floor, defendant ripped a towel bar out of the bathroom wall, hit Phillip two or three times with it, and tried to cut his throat with something sharp. Philip passed out and did not see defendant leave, but he subsequently regained consciousness and called 911. Although he no longer remembered these details at trial 12 years later, Philip told responding officers that defendant also hit him in the head with the toilet tank lid, used a broken piece of the lid to stab him in the head and face, and hit him with a handgun wrapped in a T-shirt. Officers found Philip and the bathroom covered in blood, and the tank lid was in the bathroom in pieces.

Philip was hospitalized for five days. He had significant blood loss requiring a transfusion, and would have died had he not regained consciousness and called 911. He had multiple lacerations to his face, head, neck, arms and hands; injuries to his nose and ear that extended into the cartilage; partial amputation of one finger; a spinal fracture; and broken bones in his hands. During surgery, an arterial bleed was noted.

After defendant was arrested in connection with the murders of the DeBartolos, police received information that defendant might be involved in the attack on Philip, and

---

**7**      Because defendant raises only *Pitchess* review, sentencing error, and clerical error claims, we include only a brief summary of the facts underlying his convictions.

Philip immediately selected defendant's photograph from a six-pack photo lineup. Drops of blood found outside the motel room also matched defendant's DNA.

At the time of trial, Philip still had multiple scars, his finger remained bent, and he had "discomfort" in his forehead, nose and hands, and in the back of his head.

## II.     Murders of Gary and Sandra DeBartolo

One week after the attack on Philip, Gary and Sandra DeBartolo were murdered. The couple had a large, "very sophisticated" marijuana growing operation set up inside their Kerman home. Wilson, who knew Gary and been inside the house, masterminded a plan to steal marijuana and cash from the DeBartolos.[8] Defendant joined Wilson, Singh, Butler, Jones, and Reyes in the plan to rob the DeBartolos. While Wilson drove around nearby in a separate vehicle to avoid recognition, defendant and Reyes entered the home. Singh, Butler, and Jones waited outside in Singh's getaway car. Although there was no evidence the plan included harming the DeBartolos, Reyes was armed with a gun and Johnson was armed with a knife when they entered the home, to ensure cooperation. While inside, however, Johnson cut Sandra's throat and then Gary's throat. Gary survived long enough to call 911.

Law enforcement happened to have the house under surveillance at the time, based on information that a gang had possibly targeted it for robbery, and Singh's vehicle was seen arriving and then departing. After a vehicle pursuit that ended when Singh's car crashed into another vehicle, Singh, Butler, Jones, and defendant were arrested. Reyes was subsequently arrested approximately one week later, and Wilson was arrested in early August 2009.

---

**8**     Because Gary and Sandra shared the same last name, we refer to them by their first names at times. No disrespect is intended.

## DISCUSSION

### I.      Review of *Pitchess* Proceedings

#### A.      Background

In 2016, defendant sought discovery from the personnel files of certain officers with the Kerman Police Department and the Fresno County Sheriff's Office. (Evid. Code, § 1043; *Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 41 (*Deputy Sheriffs*).) The motions were opposed by the City of Kerman and the Fresno County Sheriff's Office, but the trial court found good cause was shown, conducted in camera reviews in November 2016, and found no information subject to disclosure. (*Deputy Sheriffs, supra*, at pp. 41–43.) Defendant now requests, limited to nine law enforcement officers who testified at trial, that we conduct an independent review of the *Pitchess* proceedings to ensure that the trial court complied with the procedural requirements set forth in *People v. Mooc* (2001) 26 Cal.4th 1216, 1228–1229, and did not abuse its discretion in denying discovery. The People do not oppose this request.

#### B.      Legal Standard

Pursuant to Evidence Code section 1043, subdivision (b), "on a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both '"materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.] If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citation], 'the trial court should then disclose to the

7.

defendant "such information [that] is relevant to the subject matter involved in the pending litigation.""" (*People v. Gaines* (2009) 46 Cal.4th 172, 179; accord, *Deputy Sheriffs, supra*, 8 Cal.5th at pp. 40–43.)

On appeal, a defendant may request an independent review of the proceedings and the trial court's determination regarding the presence or absence of discoverable information. (*People v. Townsel* (2016) 63 Cal.4th 25, 67–68; *People v. Yearwood* (2013) 213 Cal.App.4th 161, 179–180.) "A trial court is afforded wide discretion in ruling on a motion for access to law enforcement personnel records. The decision will be reversed only on a showing of abuse of discretion." (*People v. Yearwood, supra*, at p. 180, citing *People v. Hughes* (2002) 27 Cal.4th 287, 330.)

### C. No Abuse of Discretion

We have independently reviewed the record and examined the material reviewed by the trial court in camera. We conclude that the trial court followed the proper procedure and created an adequate record of the in camera hearing (*People v. Mooc, supra*, 26 Cal.4th at pp. 1228–1229; *People v. Yearwood, supra*, 213 Cal.App.4th at p. 180), and that the trial court did not abuse its discretion in determining there was no information subject to disclosure (*People v. Samayoa* (1997) 15 Cal.4th 795, 827).

## II. Sentencing Error Under Section 1170

### A. Section 1170 as Amended by Senate Bill 567

As amended by Senate Bill 567, effective January 1, 2022, section 1170, subdivision (b), provides, with relevant portions italicized:

"(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).

"(2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances

8.

have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense.

"(3)  Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions.

"(4)  At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation to dispute facts in the record or the probation officer's report, or to present additional facts. The court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing.

"(5)  The court shall set forth on the record the facts and reasons for choosing the sentence imposed. The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law. A term of imprisonment shall not be specified if imposition of sentence is suspended.

"(6)  Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, *the court shall order imposition*

*of the lower term if any of the following was a contributing factor in the commission of*
*the offense*:

"(A) *The person has experienced psychological, physical, or childhood trauma*,
including, but not limited to, abuse, neglect, exploitation, or sexual violence.

"(B) The person is a youth, or was a youth as defined under subdivision (b) of
Section 1016.7 at the time of the commission of the offense.

"(C) Prior to the instant offense, or at the time of the commission of the offense,
the person is or was a victim of intimate partner violence or human trafficking.

"(7) Paragraph (6) does not preclude the court from imposing the lower term
even if there is no evidence of those circumstances listed in paragraph (6) present."
(Italics added.)

**B. Analysis**

Defendant was sentenced on February 2, 2022, one month after the effective date
of Senate Bill 567. For the attempted murder of Philip, the trial court selected the upper
term of nine years, which was then tripled under the Three Strikes law to an
indeterminate term of 27 years to life. (§§ 189/664, subd. (a), 667, subd. (e)(2)(A)(i).)
Based on extensive evidence introduced during the penalty phase,[9] defendant argues that
his childhood trauma, both physical and psychological, "was a contributing factor in the
commission of the offense," entitling him to the lower term presumption, absent a finding
"that the aggravating circumstances outweigh the mitigating circumstances [such] that

---

[9] Given the absence of dispute on this issue, it is unnecessary to summarize the penalty
phase evidence in detail. It suffices to note that because this was tried as a capital case, extensive
evidence of defendant's childhood was introduced, including that his mother drank and used
drugs while pregnant with him; he was physically abused; he was exposed to drinking and drug
use by family members; he grew up in a violent, crime ridden neighborhood; his brothers used
him to commit crimes; and he was surrounded by family involved in drugs and crime. A forensic
psychiatrist testified that defendant had a very high "adverse childhood experiences" score,
placing "him at markedly increased risk for psychiatric disorders, substance abuse, poor school
perform[ance], learning disorders, criminal behavior and reoffending"; and his high score was
strongly associated with his criminal behavior.

imposition of the lower term would be contrary to the interests of justice ….”**10** (§ 1170, subd. (b)(6).) He claims that the trial court failed to consider his childhood trauma and was unaware of the scope of its sentencing discretion under section 1170 as amended, which requires remand for resentencing because the record does not clearly indicate that the court would have selected the upper term had it been aware of the change in the law under Senate Bill 567. (*Gutierrez, supra*, 58 Cal.4th at p. 1391; accord, *Salazar, supra*, 15 Cal.5th at p. 431.) The People dispute the trial court misunderstood the scope of its sentencing discretion, but argue that even if we assume so, the error was harmless under *Gutierrez* and *Salazar*.**11**

As the parties agree, “‘[d]efendants are entitled to sentencing decisions made in the exercise of the “informed discretion” of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that “informed discretion” than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.’ [Citation.] In such circumstances, … the appropriate remedy is to remand for resentencing unless the record ‘clearly indicate[s]’ that the trial court would have reached the same conclusion ‘even if it had been aware that it had such discretion.’” (*Gutierrez, supra*, 58 Cal.4th at p. 1391; accord, *Salazar, supra*, 15 Cal.5th at p. 424; *People v. Flores* (2020) 9 Cal.5th 371, 431– 432.) Indeed, “when a court has not exercised its informed discretion, remand is the default ‘unless the record “clearly indicate[s]” that the trial court would have reached the

---

**10**     Defendant acknowledges that under the Three Strikes sentencing scheme, imposition of the middle or lower term would result in the imposition of the greater sentence of 25 years to life. (§ 667, subd. (e)(2)(A)(ii).)

**11**     The People also characterize defendant’s claim as “effectively [arguing] that the trial court exercised its discretion in an inappropriate manner,” which is subject to forfeiture for failure to object. In his reply brief, however, defendant maintains that his claim is limited to the trial court’s lack of awareness of the scope of its sentencing discretion under section 1170 as amended.

same conclusion "even if it had been aware that it had such discretion.""" (*Salazar, supra*, at p. 431, quoting *Gutierrez, supra*, at p. 1391.)

However, "[a]bsent evidence to the contrary, we presume that the trial court knew the law and followed it." (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042 (*Ramirez*); accord, *Gutierrez, supra*, 58 Cal.4th at p. 1390.) Thus, "we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666 (*Giordano*); accord, *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)

In this case, nothing in the record affirmatively reflects that the trial court misunderstood the scope of its sentencing discretion under section 1170 as amended by Senate Bill 567. The changes to the law had been in effect for one month when defendant was sentenced, and we must presume the trial court and the parties were aware of the changes to section 1170.[12] (*Ramirez, supra*, 10 Cal.5th at p. 1042; *People v. Barrett* (2012) 54 Cal.4th 1081, 1105 (*Barrett*) ["Counsel is presumed competent and informed as to applicable constitutional and statutory law."].) Trial counsel expressly referenced the penalty phase evidence and defendant's diminished mental state, and in requesting the court exercise its sentencing discretion to afford defendant the benefit of the doubt wherever possible, counsel included mention of the sentencing triad. Further, while the probation report identified no mitigating circumstances, the court expressly noted it was keeping in mind the information from the penalty phase and the probation report includes a handwritten notation referencing penalty phase evidence. Although neither the court nor the parties specifically referred to section 1170 or Senate Bill 567,

---

[12] Defendant points out that the trial court cited to the California Rules of Court, which had not yet been amended to track the changes to sections 1170 and 1385. The relevant inquiry, however, is whether the record affirmatively reflects that the trial court was unaware of the statutory changes to sections 1170 and 1385, which were effective January 1, 2022.

12.

we may not infer error from their failure to do so. (*Giordano, supra*, 42 Cal.4th at p. 666.)

Defendant acknowledges this general rule, but argues "that [this] presumption is rebutted when a material change to an applicable standard was quite recent and the trial court did not articulate the correct standard or there is reason in the record to conclude the court was unaware of it." Defendant does not identify any controlling authority applying that exception in circumstances analogous to those here. (E.g., *People v. Jimenez* (1978) 21 Cal.3d 595, 608–609 [declining to presume the trial court applied the correct standard of proof from a silent record where law had been unsettled for years concerning the standard by which prosecutors must prove voluntariness of a confession], overruled on another ground by *People v. Cahill* (1993) 5 Cal.4th 478, 509–510, fn. 17; *People v. Panozo* (2021) 59 Cal.App.5th 825, 839, italics added ["no evidence the trial court was aware of its statutory obligation to consider service-related mitigating factors at sentencing—*rather, all indications are to the contrary*"].) Defendant cites *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625 and *In re Fred J.* (1979) 89 Cal.App.3d 168, 175, both of which cite *Jimenez, supra*, at page 609 and *People v. Jetter* (1975) 15 Cal.3d 407, 408–409. As stated in *Bernadette C.*, the underlying cases articulate the proposition that "'where a new standard of proof recently has been announced, or where the issue of the applicable standard is unclear, articulation is required.'" (*Bernadette C., supra*, at p. 625.) This case does not involve either change or clarification that occurred after the relevant proceeding or a history of general uncertainty in the law that would counsel against applying the usual presumption that the trial court knew and followed the law. Therefore, we adhere to the general rule, which is both longstanding and of continuing vitality.[13] (*Ramirez, supra*, 10 Cal.5th at p. 1042.)

---

[13] As a practical matter, the legislative changes at issue in this case were neither minor nor directed to obscure statutes. Courts and counsel at every level are well aware that for the past number of years, the California Legislature has been actively reforming state criminal law

13.

Thus, to avail himself of the remedy of remand for resentencing under *Gutierrez* and *Salazar*, *based on a change in the law already in effect when he was sentenced*, defendant bears the burden of affirmatively demonstrating that the trial court misunderstood the scope of its sentencing discretion under section 1170 as amended by Senate Bill 567.  (*Salazar, supra*, 15 Cal.5th at pp. 419 & 431–432; *Gutierrez, supra*, 58 Cal.4th at p. 1391.)  He has not done so and, therefore, he is not entitled to remand for resentencing under this line of cases.

## III.    Sentencing Error Under Section 1385

### A.    Section 1385 as Amended by Senate Bill 180

Following amendment by Senate Bill 81, effective January 1, 2022, section 1385, subdivisions (a) through (c)(2), provides, with relevant portions italicized:

"(a)    The judge or magistrate may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.  The reasons for the dismissal shall be stated orally on the record.  The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter.  A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading.

"(b)  [¶]  (1)  If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a).

"(2)    This subdivision does not authorize the court to strike the additional punishment for any enhancement that cannot be stricken or dismissed pursuant to subdivision (a).

---

through statutory change, and Senate Bills 567 and 81 were notable in making significant changes to sentencing, which is an area of law *central* to criminal proceedings.

14.

"(c) [¶] (1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. *Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.* 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

"(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

"(B) *Multiple enhancements are alleged in a single case.* In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) *The current offense is connected to prior victimization or childhood trauma.*

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) *The enhancement is based on a prior conviction that is over five years old.*

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded." (Italics added.)

15.

### B. Analysis

#### 1. Remand for Resentencing Under *Gutierrez* and *Salazar*

At sentencing, the trial court acknowledged it had the discretion to strike or dismiss the prior felony conviction enhancements and GBI enhancements, but it declined to do so. Defendant argues that under section 1385, subdivision (c), as amended by Senate Bill 81, there were three mitigating circumstances that weighed greatly in favor of dismissing the enhancements: multiple enhancements were alleged, the current offenses were connected to childhood trauma, and his prior convictions were more than five years old. (§ 1385, subd. (c)(2)(B), (E), (H).) Defendant claims that the trial court was unaware of the change in the law and, therefore, this matter must be remanded for resentencing. (*Gutierrez, supra*, 58 Cal.4th at p. 1391; accord, *Salazar, supra*, 15 Cal.5th at p. 431.) The People dispute the trial court was unaware of the change in the law, but maintain that in any event, on this record, remand is not required under *Gutierrez* and *Salazar*.

For the reasons previously discussed, we reject defendant's claim that he is entitled to remand for resentencing under *Gutierrez* and *Salazar*. The statutory changes were already in effect when he was sentenced, we will not presume error from a silent record, and nothing in this record affirmatively reflects that the trial court was unaware of the scope of its sentencing discretion. (*Ramirez, supra*, 10 Cal.5th at p. 1042; *Giordano, supra*, 42 Cal.4th at p. 666.)

#### 2. Forfeiture of Claim Under *Walker*

In the alternative, defendant claims that even if the trial court was aware of the change in the law under Senate Bill 81, it abused its sentencing discretion because under *Walker*, the existence of mitigating circumstances creates a rebuttable presumption in favor of dismissal, absent a finding that dismissal would endanger public safety.[14]

---

[14] There is presently a split of authority over whether the presence of a mitigating circumstance creates a rebuttable presumption "that dismissal of an enhancement is in the

16.

(*Walker, supra*, 86 Cal.App.5th at p. 398, review granted.)  Defendant argues that trial counsel's request to strike the enhancements and for leniency was sufficient to preserve this claim for review, but if we find his claim forfeited, he argues that counsel rendered IAC.  We disagree.

"'A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial.  [Citation.]  The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons .…"'" (*People v. Scott* (2015) 61 Cal.4th 363, 406.)  "Strong policy reasons support this rule:  'It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.  [Citations.]'  [Citation.]  '"'"The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.  If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal."'"'" (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; accord, *People v. Salazar* (2016) 63 Cal.4th 214, 239–240; *People v. French* (2008) 43 Cal.4th 36, 46.)

---

furtherance of justice (and that its dismissal is required) *unless* the court makes a finding that the resultingly shorter sentence due to dismissal 'would endanger public safety.'" (*Walker, supra*, 86 Cal.App.5th at p. 398, review granted [interpreting § 1385, subd. (c)(1), (2)]; contra, *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098 (*Ortiz*), review granted Apr. 12, 2023, S278894 [declining to follow *Walker*, and concluding that "the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement"]; *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052, review granted Jan. 10, 2024, S282925 [following *Ortiz*].) The California Supreme Court has granted review to resolve that conflict, and resolution of the issues in this case does not require us to weigh in.

"'[D]iscretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888, fn. 7.) Absent a substantive change in the law that applies retroactively (e.g., *Salazar, supra*, 15 Cal.5th at pp. 431–432; *People v. Stamps* (2020) 9 Cal.5th 685, 698–699), or an extenuating circumstance such as the futility of objecting under the then-governing substantive law (e.g., *People v. Perez* (2020) 9 Cal.5th 1, 7–8; *People v. Brooks* (2017) 3 Cal.5th 1, 92), neither of which is at issue here, the policy reasons underlying the forfeiture doctrine fully support its application where a defendant remains silent in the trial court when sentenced and then seeks to obtain appellate relief based on asserted sentencing errors that could have been raised at the time of sentencing.

Trial counsel's generic request to strike the enhancements and for leniency was insufficient to preserve defendant's claim that the trial court abused its sentencing discretion because there were three mitigating circumstances that "weigh[ed] greatly in favor of dismissing the enhancement[s]," absent a finding "that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) We recognize that *Walker*'s interpretation of section 1385 as creating a rebuttable presumption favoring dismissal did not occur until almost one year after defendant's sentencing hearing (*Walker, supra*, 86 Cal.App.5th at pp. 398–399, review granted), but the language interpreted by *Walker* and the courts that followed appears plainly on the face of the statute (*ibid.*; e.g., *Ortiz, supra*, 87 Cal.App.5th at pp. 1096–1098, review granted). Had defendant alerted the trial court that he believed he was entitled to dismissal of the enhancements due to the presence of three mitigating circumstances, absent a finding dismissal would endanger public safety, the very error he now asserts on appeal could have been corrected or the record otherwise developed as to the issue. "[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct" (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208, fn. omitted), and strong

policy reasons support application of the rule in the situation presented in this case (*People v. Stowell, supra*, 31 Cal.4th at p. 1114).

### 3. IAC

Turning to defendant's related IAC claim, to prevail, a defendant "'must satisfy a two-pronged showing:  that counsel's performance was deficient, and that [he] was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'"  (*People v. Woodruff* (2018) 5 Cal.5th 697, 736 (*Woodruff*), quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)  "'[T]he standard for judging counsel's representation is a most deferential one.'  (*Harrington v. Richter* (2011) 562 U.S. 86, 105 (*Richter*).)  We 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight.'  (*Bell v. Cone* (2002) 535 U.S. 685, 702.)  'Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.'  (*Richter*, at p. 105.)"  (*In re Long* (2020) 10 Cal.5th 764, 773.)

Therefore, a "defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on [IAC] on direct appeal only if there is affirmative evidence that counsel had "'"no rational tactical purpose"'" for an action or omission."  (*People v. Mickel* (2016) 2 Cal.5th 181, 198, quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.)  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  (*Strickland, supra*, 466 U.S. at p. 690; accord, *Barrett, supra*, 54 Cal.4th at p. 1105.)  At issue here, "'[d]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.'"  (*People v. Carrasco* (2014) 59 Cal.4th 924, 985 (*Carrasco*), quoting *People v. Hillhouse* (2002) 27 Cal.4th 469, 502.)

The trial court found that defendant was armed and used a weapon; he engaged in violent conduct indicating a serious danger to society; his prior convictions were numerous and increasing in seriousness; he served terms in prison and the youth authority; and his performance on probation and parole was unsatisfactory.[15] (Rule 4.421(a)(2), (b)(1)–(5).) In mitigation, the court recognized the penalty phase evidence. Trial counsel requested the court exercise leniency, but the unprovoked attacks on Philip and the DeBartolos were as senseless as they were vicious, defendant was then 42 years old with a lengthy criminal record, and the court found it appropriate to "permanently remove[]" defendant "from free society." Further, this case wended its way through the court system for almost 13 years, and the trial judge and defendant's trial counsel were very familiar with one another and the facts of the case.[16] Trial counsel may well have reasonably determined that under the circumstances, an objection to imposition of the enhancements, a request for a more specific record of the court's reasons for declining to strike them, or a request for an express ruling on the endangerment to public safety would not have been fruitful, and we must presume counsel engaged in that calculus. (*Strickland, supra*, 466 U.S. at p. 690; *Carrasco, supra*, 59 Cal.4th at p. 985; *Barrett, supra*, 54 Cal.4th at p. 1105.) Thus, notwithstanding the existence of mitigating circumstances under section 1385, we do not agree with defendant that counsel's failure to object or request a more detailed ruling or specific findings was deficient on this record. (*Strickland, supra*, at p. 690; *Carrasco, supra*, at p. 985; *Barrett, supra*, at p. 1105.)

---

[15] Defendant does not claim that the trial court engaged in impermissible factfinding with respect to section 1170, subdivision (b), discussed *ante*, but a certified record of defendant's convictions and juvenile adjudications, including information on probation and parole revocations, was submitted in support of the prior conviction allegations.

[16] The record reflects the judge who presided over the 2021 trial and 2022 sentencing was assigned to the case in 2011.

Furthermore, we are unpersuaded that there is a reasonable probability of a more favorable outcome had it not been for counsel's failure to either object to the lack of a more specific record of the reasons for declining to dismiss the enhancements or request a more specific record be made. (*Woodruff, supra*, 5 Cal.5th at p. 739; see *Harrington v. Richter* (2011) 562 U.S. 86, 112 ["The likelihood of a different result must be substantial, not just conceivable."].) Accordingly, defendant's IAC claim is foreclosed.

## IV. Clerical Errors in Minute Order and Abstract of Judgment

Finally, the minute order from the sentencing hearing and the abstract of judgment reflect that the trial court imposed a $1,000 restitution fine under section 1202.4, subdivision (b), but neglect to reflect the fine was stayed. In addition, the abstract of judgment incorrectly reflects imposition of a GBI enhancement on count 5, mayhem. The parties agree that these clerical errors should be corrected.

"Any discrepancy between the judgment as orally pronounced and as recorded in the clerk's minutes or abstract of judgment is presumed to be the result of clerical error" (*People v. Leon* (2020) 8 Cal.5th 831, 855, citing *People v. Mesa* (1975) 14 Cal.3d 466, 471), and we may order correction on review (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, citing *In re Candelario* (1970) 3 Cal.3d 702, 705). The trial court shall direct the issuance of an amended minute order and amended abstract of judgment reflecting that the $1,000 restitution fine was stayed and omitting reference to a GBI enhancement attached to count 5.

## DISPOSITION

The judgment is affirmed. The trial court shall issue, one, an amended minute order reflecting that the $1,000 restitution fine imposed under section 1202.4, subdivision (b), was stayed and, two, an amended abstract of judgment reflecting the foregoing and omitting reference to a GBI enhancement attached to count 5 for mayhem.

21.

The trial court shall forward a copy of the amended abstract of judgment to the appropriate authorities.

MEEHAN, J.

WE CONCUR:


HILL, P. J.


LEVY, J.