Filed 5/29/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT SCHNEIDER,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT et al.,<br><br>    Real Parties in Interest. | B341712<br><br>(Los Angeles County Super. Ct. No. YA098537) |

    ORIGINAL PROCEEDINGS in mandate.  Kelly M. Kelley, Judge.  Petition granted with directions.

    Ricardo D. Garcia, Los Angeles County Public Defender, Albert J. Menaster, Head Deputy Public Defender, Nima Farhadi, Sheila A. Sattar, and Lisa Zimmerman, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Logan Mathevosian & Hur, Amber A. Logan, Rina M. Mathevosian, and Elise H. Hur, for Real Parties in Interest.

_____

Robert Schneider, who is charged with murder, filed a discovery motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*), seeking discovery of *Brady* information in the confidential personnel records of six deputies with the Los Angeles County Sheriff's Department (LASD).  The trial court found Schneider established good cause for an in camera review of the records, and after conducting the review, determined the personnel files of four of the six deputies contained *Brady* material.  But the court denied Schneider's request for disclosure of the *Brady* material itself, and instead ordered disclosure of the names, addresses, and telephone numbers of the individuals who had witnessed or complained of the conduct at issue.  The court concluded that this limited disclosure was mandated under *Pitchess* procedures.

Schneider petitioned for a writ of mandate, challenging the court's order denying his request for the fuller disclosures.  We grant the petition, concluding the trial court should have ordered LASD to disclose all *Brady* material in the four deputies' personnel files, including documents and any audio-video materials.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2024, the People filed an information charging Schneider with murder (Pen. Code, § 187, subd. (a)). Schneider pleaded not guilty to the charge.

The People notified the defense that six LASD deputies connected to Schneider's case had potential "disclosable information" in their personnel records.

Schneider filed a "Notice of Motion for Discovery of *Brady* Information in a Police Personnel File" under *People v. Superior Court (Johnson)* (2015) 61 Cal.4th 696 (*Johnson*). The motion asked the court to review in camera, under "the *Pitchess* procedure," the personnel records of the six LASD deputies and provide Schneider with "[a]ll *Brady* . . . information" as to the deputies. An accompanying declaration by Schneider's counsel stated the prosecutor had notified the defense that the six deputies had "information in their personnel file that may be exculpatory or used for impeachment" and that these notifications (attached to the declaration) triggered Schneider's motion. The declaration explained in detail how each deputy was "necessary and essential" to the case, including that they authored reports in the case; interviewed witnesses; observed, collected, and documented evidence at the scene; and conducted field show-up identifications. The declaration asserted that, based on the deputies' roles in the investigation, material in their personnel files that undermined their credibility constituted *Brady* evidence that had to be disclosed to the defense.

LASD opposed Schneider's motion. It argued that if the court were to order disclosure, such "[d]isclosure should be

3

limited to the names, addresses[,] and phone numbers of complainants and witnesses."[1]

During the hearing on the motion, Schneider's counsel requested the court turn over *Brady* documentary evidence rather than merely name and contact information for complainants and witnesses. LASD countered that "it is the *Pitchess* procedure[s] that appl[y], and the initial disclosure in *Pitchess* is just the name and the contact information of the reporting parties and witnesses." The court concluded Schneider made a sufficient showing to trigger an in camera review of the requested records of all six officers. The court also noted that any potential disclosure would be "limited to the names, addresses[,] and phone number of the complainants and witnesses." After conducting the review, the court ordered disclosure of this limited information for four of the named deputies. Schneider's counsel raised a concern about the limited disclosures and alerted the court he "may file a motion to reconsider based on [his] arguments . . . about . . . *Brady* evidence."

Several months later, Schneider filed another motion for "Disclosure of *Brady* Material Contained in Peace Officer Personnel Files," which the court deemed "essentially a motion for reconsideration." Schneider's counsel asserted that because

---

[1] LASD also argued there was no good cause to conduct an in camera review of two of the deputies' files because the prosecutor's notification provided only that a *Pitchess* motion had previously been granted for those deputies. Because LASD did not seek review of the court's order finding good cause and did not raise this argument in the instant writ proceeding, we have no basis to examine whether such a limited notification provides good cause to conduct a review of a personnel file for *Brady* information.

4

he had filed a "*Brady*/*Johnson* motion" seeking *Brady* discovery rather than a classic *Pitchess* motion, he was entitled to the disclosure of "actual *Brady* evidence," meaning "*everything* in the personnel file that the trial court found to be exculpatory and material under *Brady* . . . as opposed to a single document listing the name and contact information of each complainant," as is commonly provided in response to a classic *Pitchess* motion.

LASD opposed. It argued Schneider's motion was "an untimely motion for reconsideration" and not based on new facts, circumstances, or law. It also again asserted that under "*Pitchess* procedures," Schneider was "not entitled to verbatim records, statements[,] or other documents contained in the files."

At the hearing, the court acknowledged that Schneider had filed a *Brady*/*Johnson* motion "as opposed to a straight *Pitchess* motion" and was thus "entitled" to a *Brady* review. But the court noted *Johnson*, *supra*, 61 Cal.4th 696 did not squarely articulate the scope of the information to be turned over once the court determines from its in camera review that *Brady* material is present in an officer's file. The court concluded that "once the defense has met the burden of obtaining a *Pitchess* hearing . . . [the court must] then follow the *Pitchess* procedures." Under those procedures, the court reasoned, it should not "turn[] over more than what is required by *Pitchess*," i.e., names and contact information for complainants and witnesses.

Schneider filed the instant petition for a writ of mandate directing the trial court to vacate its ruling and enter a new order requiring LASD to disclose the actual *Brady* material located within the personnel files of each of the four deputies. We issued an order to show cause.

5

## DISCUSSION

Schneider seeks writ review of the trial court's order limiting disclosure of *Brady* material in deputies' confidential personnel records to names, addresses, and phone numbers of complainants and witnesses. He contends that "[w]hen a trial court conducts judicial review of an officer's personnel file for *Brady* discovery, it is essentially charged with executing the prosecution's *Brady* duty," and it must disclose "any *Brady* material it uncovers," such as "documentary evidence," "police reports," "video evidence," and "audio recordings." We agree with Schneider.[2]

---

[2] During oral argument LASD appeared to concede that Schneider would be entitled to disclosure of the relevant records themselves in the case of *Brady* material. However, LASD maintained such full disclosures were not required in this case, as it (incorrectly) maintained the trial court conducted a review for *Pitchess* material, not *Brady* material.

LASD also contends Schneider's second motion was an improper motion for reconsideration under Code of Civil Procedure section 1008 because it was not timely, was not "based upon new or different facts, circumstances, or law," and did not include an affidavit. (See Code Civ. Proc., § 1008, subd. (a) [party may request reconsideration of an order "within 10 days" and "based upon new or different facts, circumstances, or law," as stated in an affidavit].) However, Code of Civil Procedure section 1008 does not apply in criminal cases. (*Alvarez v. Superior Court* (2004) 117 Cal.App.4th 1107, 1111, fn. 3; *People v. Castello* (1998) 65 Cal.App.4th 1242, 1247-1248, cited with approval in *People v. Superior Court (Laff)* (2001) 25 Cal.4th 703, 728.) Rather, a criminal court has "inherent power to reconsider its own interim rulings." (*Castello*, at p. 1249; see Super. Ct. L.A. County, Local

6

" 'Writ review is appropriate in discovery matters where, as here, it is necessary to address "questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases." ' " (*Young v. Superior Court* (2022) 79 Cal.App.5th 138, 156; accord, *People v. Superior Court (Cheek)* (2001) 94 Cal.App.4th 980, 987.) "Generally, we review a superior court's decision on the discoverability of material in police personnel files under an abuse of discretion standard. [Citation.] But when, as here, the trial court's ruling is premised on an asserted misinterpretation of a legal principle or statute, we review such legal questions de novo." (*Serrano v. Superior Court* (2017) 16 Cal.App.5th 759, 767 (*Serrano*); accord, *Young*, at p. 156.)

A.   Pitchess *Procedures Must Be Followed To Obtain* Brady *Information in Officers' Confidential Personnel Files*

"Under *Brady*, *supra*, 373 U.S. 83, 87, the prosecution must disclose to the defense any evidence that is 'favorable to the accused' and is 'material' on the issue of either guilt or punishment." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7 (*City of Los Angeles*).) " '[E]vidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness.' " (*Association for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40 (*ALADS*); see

---

Rules, rule 8.6(d) ["any subsequent motion for the same relief . . . whether upon the same or any allegedly different state of facts must be presented to the same judge whenever possible"; additional procedural requirements apply for motion presented to a different bench officer].)

*Serrano, supra*, 16 Cal.App.5th at p. 767 [government's disclosure "duty encompasses impeachment evidence as well as exculpatory evidence"].) "[E]vidence is material if it is reasonably probable its disclosure would alter the outcome of trial." (*Johnson, supra*, 61 Cal.4th at pp. 709-710.) "This materiality standard applies both after judgment, when evaluating whether *Brady* was violated, and before judgment, when evaluating whether evidence favorable to the defense must be disclosed." (*People v. Nuno* (2024) 105 Cal.App.5th 1030, 1055 (*Nuno*); see *City of Los Angeles*, at p. 8 ["the test is always the same," no matter when the *Brady* disclosure issue arises].) "*Brady* materiality is a 'constitutional standard' required to ensure that nondisclosure will not 'result in the denial of defendant's [due process] right to a fair trial.'" (*City of Los Angeles*, at p. 8.)

"Evaluating materiality requires consideration of the collective significance of the undisclosed evidence [citation], as well as 'the effect of the nondisclosure on defense investigations and trial strategies.'" (*ALADS, supra*, 8 Cal.5th at p. 40.) Because it may be difficult to know before trial what evidence will ultimately prove material, prosecutors should "resolve doubtful [*Brady*] questions in favor of disclosure." (*ALADS*, at p. 40; accord, *Nuno, supra*, 105 Cal.App.5th at p. 1055.)

"The duty [to disclose] extends to evidence known to others acting on the prosecution's behalf, including the police. [Citations.] The duty . . . 'exists even though there has been no request by the accused.'" (*Johnson, supra*, 61 Cal.4th at p. 709.)

A peace officer's "confidential personnel records may contain *Brady* material. An officer may provide important testimony in a criminal prosecution. Confidential personnel records may cast doubt on that officer's veracity. Such records

8

can constitute material impeachment evidence." (*ALADS*, *supra*, 8 Cal.5th at p. 51.) Although such records are in the custody of that officer's law enforcement agency, California law prohibits their disclosure in a criminal or civil court proceeding, with some exceptions. (*Serrano*, *supra*, 16 Cal.App.5th at p. 768 [absent an exception, "peace officer personnel records 'are confidential and shall not be disclosed in any criminal or civil proceeding,' " quoting Pen. Code, § 832.7, subd. (a)].) Given officers' "strong privacy interest" in their personnel records, "such records should not be disclosed unnecessarily." (*Johnson*, *supra*, 61 Cal.4th at p. 711.)

The *only* way to obtain access to confidential police personnel records or records of citizens' complaints for use in a court proceeding is via the procedures set forth in what are commonly known as the "*Pitchess* statutes." (*ALADS*, *supra*, 8 Cal.5th at p. 40; see *Johnson*, *supra*, 61 Cal.4th at p. 716; *People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1475.) In *Pitchess*, *supra*, 11 Cal.3d 531, the California Supreme Court "recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1219 (*Mooc*).)

The Legislature enacted the *Pitchess* statutes — the statutory scheme set forth in Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045[3] — to codify the holding of *Pitchess*. "The statutory scheme carefully

---

[3] Further statutory references are to the Evidence Code unless otherwise stated.

9

balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense." (*City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53.) Although *Pitchess* concerns a "separate strand of law" from *Brady* and its progeny (*Johnson, supra,* 61 Cal.4th at p. 710), the Supreme Court has clarified that to obtain *Brady* material in confidential police personnel files, all parties to a criminal case must follow the procedures set forth in the *Pitchess* statutes. (See *Johnson,* at pp. 715-716 [request for *Brady* material in officers' personnel records "must comply with the statutory procedures to obtain information in those records"]; see also *Nuno, supra,* 105 Cal.App.5th at p. 1055; *People v. Gutierrez, supra,* 112 Cal.App.4th at p. 1474.) " '[T]he two schemes [*Brady* and *Pitchess*] operate in tandem.' " (*Johnson,* at p. 720.)

A motion seeking access to *Brady* material in an officer's personnel files (commonly called a *Brady*/*Johnson* motion) may originate in several ways. "[S]ome law enforcement agencies have created so-called *Brady* lists. These lists enumerate officers whom the agencies have identified as having potential [*Brady*] information in their personnel files." (*ALADS, supra,* 8 Cal.5th at p. 36; see *Johnson, supra,* 61 Cal.4th at pp. 706-707.) The agencies then disclose the fact that an officer is on the *Brady* list to the prosecution, which in turn satisfies its constitutional duty under *Brady* by notifying the defendant. (*Johnson,* at pp. 706-707, 721-722.) This practice is commonly referred to as a "*Brady*-alert" or "*Brady*-tip." (*ALADS,* at p. 36; see *Johnson,* at p. 705.) Alternatively, the prosecution sometimes gleans from its own records or databases that an officer's file may contain *Brady* material, and then discloses that information to the defendant.

10

(See, e.g., *Serrano, supra,* 16 Cal.App.5th at p. 764.) This is typically referred to as a "*Brady* bank disclosure."[4] No matter the source, the onus is then on the defendant to file a *Brady/Johnson* motion seeking the *Brady* material in the officer's file. (*Johnson,* at p. 705 [having received a *Brady* tip, "defendants may decide for themselves" whether to bring a motion].)[5]

As discussed, a *Brady/Johnson* motion must comply with the procedural requirements set forth in the *Pitchess* statutes. The motion must be in writing; provide "notice to the governmental agency that has custody and control of the records"; and be filed with the appropriate court, within the statute's prescribed timeframe. (§ 1043, subd. (a).) It also must identify the (1) proceeding in which discovery is sought, (2) party seeking discovery, (3) officer whose records are sought, (4) agency that has custody of the records, (5) time and place for the hearing, and (6) "type of records or information sought." (§ 1043, subd. (b)(1), (2).)

The motion must also include an affidavit or declaration that shows "good cause for the discovery" to justify an in camera review of an officer's confidential file. (Evid. Code, § 1043, subd. (b)(3); *Garcia v. Superior Court* (2007) 42 Cal.4th 63, 70, fn. 7.) The affidavit or declaration need not be based upon personal

---

[4] In Los Angeles County, this is sometimes called an "ORWITS hit." ORWITS is short for the Los Angeles County District Attorney's Officer and Recurrent Witness Information Tracking System database.

[5] A third possibility is that the defense did not receive a *Brady* alert from the prosecution, but had another source of information that the personnel file may contain *Brady* information. (See *ALADS, supra,* 8 Cal.5th at p. 54, fn. 7.)

11

knowledge, and instead may set forth facts on information and belief. (*Garcia*, at p. 70.) If good cause is shown, the court must undertake an in camera review following the procedures in Evidence Code section 1045, subdivision (b), and Penal Code section 915, and disclose to the defendant " ' "such information [that] is relevant to the subject matter involved in the pending litigation." ' " (*Johnson*, *supra*, 61 Cal.4th at p. 711; see *Mooc*, *supra*, 26 Cal.4th at p. 1226.)

B.    *Substantive Differences Between Classic* Pitchess *and* Brady/Johnson *Motions Apply at the "Good Cause" and In Camera Phases*

Although a party bringing a *Brady/Johnson* motion must comply with the procedures set forth in the *Pitchess* statutes, there is some "tension between *Brady* and the *Pitchess* statutes" (*ALADS*, *supra*, 8 Cal.5th at p. 53) leading to substantive differences between a classic *Pitchess* motion and a *Brady/Johnson* motion. The schemes diverge when it comes to what the movant must show to justify an in camera review and, if the motion is meritorious, what information the court must order disclosed following its review of the confidential personnel files in chambers.

1.    *Different good cause showings are required to trigger in camera review for classic* Pitchess *and* Brady/Johnson *motions*

The finding of "good cause" required for both a classic *Pitchess* and a *Brady/Johnson* motion "is not to determine whether documents will be disclosed to the movant; it is to determine whether information will be reviewed in camera. Accordingly, the burden imposed by the requirement 'is not

12

high.' " (*ALADS*, *supra*, 8 Cal.5th at p. 42; accord, *Johnson*, *supra*, 61 Cal.4th at p. 720.) To show "good cause," the movant must demonstrate (1) " 'the materiality' of the information sought 'to the subject matter involved in the pending litigation,' " and (2) " 'a "reasonable belief" that the agency has the type of information sought.' " (*ALADS*, at pp. 41-42; accord, *Johnson*, at p. 720.) If the movant "shows that the request *is* relevant to the pending charges, and explains how, the materiality requirement will be met." (*Johnson*, at p. 721.)

" 'Traditionally, *Pitchess* motions seek information about past complaints by third parties of excessive force, violence, dishonesty, or the filing of false police reports contained in . . . officers' personnel file[s].' " (*Johnson*, *supra*, 61 Cal.4th at p. 710.) Through a *Pitchess* motion, a defendant can marshal evidence of such misconduct to corroborate his or her claim that the officer committed similar misconduct in dealing with the defendant. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021 (*Warrick*).) To show good cause for a classic *Pitchess* motion, the defendant must propose a defense or defenses to the pending charge and describe with some specificity " ' "how the discovery being sought would support such a defense or how it would impeach the officer's version of events." ' " (*Johnson*, at p. 721; accord, *Warrick*, at p. 1021.) These requirements ensure the defendant's request is "limited to instances of officer misconduct related to the misconduct asserted by the defendant" and that it "excludes requests for officer information that are irrelevant to the pending charges." (*Warrick*, at p. 1021.)

For a *Brady*/*Johnson* motion, the burden necessary to trigger in camera review is, practically speaking, even lower. "If information is 'material' within the meaning of *Brady*, it is

necessarily material 'to the subject matter involved in' a criminal prosecution." (*ALADS*, *supra*, 8 Cal.5th at p. 42.) Thus, to trigger in camera review, all a defendant must do is submit a description of the *Brady*-tip or *Brady* bank alert that was provided to the defense, "together with some explanation of how the officer's credibility might be relevant to the proceeding." (*Johnson*, *supra*, 61 Cal.4th at p. 721; accord, *Serrano*, *supra*, 16 Cal.App.5th at p. 774.) No allegations of officer misconduct in the defendant's case are required. (*Serrano*, at p. 776 ["when the officer's personnel file is known to contain potential *Brady* material, the defendant cannot be required to allege that the officer engaged in misconduct"].)

      2.    *The disclosure limitations of the* Pitchess *scheme do not apply to* Brady *material*

Once good cause has been shown, triggering the right to an in camera review, the scope of the disclosures for a classic *Pitchess* versus a *Brady*/*Johnson* motion is also meaningfully different.

"Although both *Brady* [citation] and its progeny, and the statutory *Pitchess* procedures employ the terms 'material' or 'materiality' in describing what must be disclosed [upon an in-camera review], these words are not used in the same way." (*Johnson*, *supra*, 61 Cal.4th at p. 711.) Materiality under *Brady* "is narrower than the *Pitchess* requirements." (*Johnson*, at p. 712.) As noted, under *Brady*, "evidence is 'material' only if it is reasonably probable a prosecution's outcome would have been different had the evidence been disclosed." (*Johnson*, at p. 711.) By contrast, "California's *Pitchess* discovery scheme entitles a defendant to information that will 'facilitate the ascertainment of the facts' at trial [citation], that is, 'all information pertinent to

14

the defense.' " (*City of Los Angeles, supra*, 29 Cal.4th at p. 14.) On a classic *Pitchess* motion, even complaints that have been deemed unfounded may be "potentially relevant" (*Johnson*, at p. 720) and thus are required to be disclosed. (See *People v. Zamora* (1980) 28 Cal.3d 88, 93, fn. 1 ["Unsustained complaints are discoverable."]; accord, *Saulter v. Municipal Court* (1977) 75 Cal.App.3d 231, 240.) By contrast, a citizen complaint that has been deemed unfounded typically would not meet *Brady*'s higher materiality standards. In this respect, there is " 'both a broader and lower threshold for disclosure' " for discovery of officer personnel records pursuant to a classic *Pitchess* motion than for a *Brady/Johnson* motion. (*Johnson*, at p. 720; accord, *City of Los Angeles*, at p. 14.)[6]

However, "in some ways the *Pitchess* statutory scheme is potentially narrower than *Brady*'s requirements." (*Johnson, supra*, 61 Cal.4th at p. 720.) For instance, the statutory exceptions to disclosure under section 1045, subdivisions (b) and (c), that apply to a classic *Pitchess* motion are inapplicable to a *Brady/Johnson* motion.[7] (*Johnson*, at p. 720 ["all information

---

[6] On the other hand, during an in camera review on a classic *Pitchess* motion, the scope of the discoverable information is limited to possible instances of misconduct related to the type(s) of misconduct in which the defendant alleges the officer engaged in dealing with him. (*Warrick, supra*, 35 Cal.4th at p. 1027.) An in camera review for *Brady* material is not limited to any particular kind of misconduct, and in this way is broader.

[7] Section 1045, subdivision (b)(1), exempts from *Pitchess* disclosures "the conclusions of any officer investigating a complaint." Subdivision (b)(2) exempts "[f]acts . . . that are so remote as to make disclosure of little or no practical benefit."

that the trial court finds to be exculpatory and material under *Brady* must be disclosed, notwithstanding . . . section 1045's limitations"]; accord, *ALADS*, *supra*, 8 Cal.5th at p. 43 [notwithstanding the exceptions in section 1045, subdivisions (b) and (c), "the court must disclose information that is favorable to the defense and 'material' within the meaning of *Brady*"].)  This is because the " ' " '*Pitchess* process' operates in parallel with *Brady* and does not prohibit the disclosure of *Brady* information." ' "  (*Johnson*, at p. 720; see *Eulloqui v. Superior Court* (2010) 181 Cal.App.4th 1055, 1065 [if "materiality under the more stringent *Brady* standard is shown, the statutory restrictions pertaining to the *Pitchess* procedure are inapplicable"].)

Most pertinent here, in the classic *Pitchess* context, there is also a judicially-created limitation on the information from an officer's confidential files that is typically ordered to be disclosed. " 'Although not required by the [*Pitchess*] statutory scheme, the "courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead . . . that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the

---

Even though these exceptions do not apply to *Brady*/*Johnson* motions, practically speaking, materials concerning remote events that would have little "practical benefit" would not be *Brady* material either.

Section 1045, subdivision (c), provides that when a *Pitchess* motion seeks information concerning the policies or pattern of conduct of a law enforcement agency, the trial court may consider whether the information may be obtained from a source other than officers' individual personnel records.

16

dates of the incidents in question." ' " (*Nuno, supra,* 105 Cal.App.5th at p. 1054.) This practice provides a " 'further safeguard,' " along with the in camera review procedure and exceptions in section 1045, to protect officers from disclosure of their confidential information. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.)

In its briefing, LASD contends the trial court correctly determined this judicially-created limitation applies equally to prevent full disclosure of *Brady* material in an officer's personnel file. We conclude this limitation does not apply to *Brady* material.

In the context of a classic *Pitchess* motion, the safeguard of limiting disclosures to name and contact information is permissible because " '*the relevance of the information sought is minimal* and the officer's privacy concerns are substantial.' " (*Warrick, supra,* 35 Cal.4th at p. 1019, italics added; accord, *City of Tulare v. Superior Court* (2008) 169 Cal.App.4th 373, 383; *Becerrada v. Superior Court* (2005) 131 Cal.App.4th 409, 414; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1090.) As discussed, when undertaking an in camera review after granting a classic *Pitchess* motion, a court is looking for *any* material in the officer's file that is "potentially relevant" (*Johnson, supra,* 61 Cal.4th at p. 720), i.e., any records that would touch on the types of misconduct that the defendant has alleged the officer committed in dealing with the defendant (*Warrick,* at p. 1027). This would include complaints that the police agency has deemed unfounded. (See *People v. Zamora, supra,* 28 Cal.3d at p. 93, fn. 1; see also *Haggerty,* at p. 1090 ["the actual documents of third party complaint information often have minimal relevance"].) Given this low bar and the potential to

17

sweep in materials with only minimal relevance in an officer's confidential file, limiting initial disclosures to names and contact information for complainants and witnesses makes sense in a classic *Pitchess* context.

By contrast, when a court determines that an officer's personnel file contains *Brady* information, by definition, the relevance of the material is not "minimal." Rather, the court has concluded that the information has the potential to affect the outcome of the trial. In this instance, providing only names and contact information for witnesses who know about the exculpatory information, in lieu of the actual documents or other materials in the file, would thwart the defendant's access to "all available exculpatory evidence to mount a defense," considering such access is "[t]he sole purpose" of *Brady*. (*In re Brown* (1998) 17 Cal.4th 873, 881.)

Even in the classic *Pitchess* context, courts have determined " '[t]he practice of disclosing only the name of the complainant and contact information must yield to the requirement of providing sufficient information to prepare for a fair trial.' " (*Nuno, supra*, 105 Cal.App.5th at p. 1054; accord, *Alvarez v. Superior Court* (2004) 117 Cal.App.4th 1107, 1112.) Thus, "if the movant's ability to investigate the limited, disclosed information to determine whether it would lead to the discovery [is] stymied," such as by a complainant or witness's refusal or inability to cooperate when contacted by the defense, the only way the defense "can effectively investigate this matter before trial" is if it is given the actual materials in the officers' personnel files. (*Nuno*, at p. 1054; see *Alvarez*, at pp. 1112-1113.) In those instances, a movant may file a motion to receive "supplemental *Pitchess* material," i.e., the actual documents themselves. (See

18

*Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 828-829 [defendant can move for further *Pitchess* discovery if names of complainants and contact information prove to be inadequate]; see also *City of Tulare v. Superior Court, supra,* 169 Cal.App.4th at pp. 376, 382; *Alvarez,* at pp. 1112-1113.)  But when a court has determined in its initial in camera review that documents or other materials in an officer's file fall under *Brady,* there is no need for such a second step; the movant is entitled to full *Brady* discovery in the first instance.

Although the *Pitchess* statutes' procedural requirements apply to *Brady/Johnson* motions, the *Pitchess* scheme " 'must be viewed against the larger background of the prosecution's' *Brady* obligation 'so as not to infringe the defendant's right to a fair trial.' "  (*ALADS, supra,* 8 Cal.5th at p. 43; see *City of Los Angeles, supra,* 29 Cal.4th at p. 14 [*Pitchess* scheme " 'does not prohibit the disclosure of *Brady* information' "].)  Just as the statutory limitations on disclosure in section 1045, subdivisions (b) and (c), do not apply to *Brady* information in personnel files (*ALADS,* at p. 43), the practice of refusing to disclose the actual records is not applicable for *Brady* material.  Rather, the court must disclose all *Brady* material, including any relevant complaints, reports, other documentation, or audio-visual evidence.[8]  (See *ALADS,* at p. 43 ["the court must disclose

---

[8]     After the court conducts its in camera review, "the transcript of the in camera hearing and all copies of the documents should be sealed."  (*Mooc, supra,* 26 Cal.4th at p. 1229.)  Further, " '[t]he court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer records . . . order that the records disclosed or discovered may not be used for any purpose other than a court proceeding

information that is favorable to the defense and 'material' within the meaning of *Brady*"]; *Johnson*, *supra*, 61 Cal.4th at p. 720 ["all information that the trial court finds to be exculpatory and material under *Brady* must be disclosed"]; *City of Los Angeles*, at p. 15 ["[A] trial court that in response to a criminal defendant's discovery motion undertakes an in-chambers review of confidential documents can, if the documents contain information whose use at trial could be dispositive on either guilt or punishment, *order their disclosure*." (Italics added)].) Construing the *Pitchess* scheme to allow for such full *Brady* disclosure "best 'harmonize[s]' *Brady* and *Pitchess*." (*ALADS*, at p. 51.) To conclude otherwise would pose a substantial threat to *Brady* compliance and "infringe the defendant's right to a fair trial." (*Mooc*, *supra*, 26 Cal.4th at p. 1225.)

Having ruled that there was good cause for an in camera review of the personnel files, and having found *Brady* material in some of them, the trial court was obligated to order the disclosure

---

pursuant to applicable law.' [Citations.] Upon a proper motion by the custodian or the officer at issue, the court may also 'make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.' " (*ALADS*, *supra*, 8 Cal.5th at p. 43; see § 1045, subds. (d), (e).) This requirement applies equally to classic *Pitchess* and *Brady* material that originated in a personnel file.

The parties agreed at oral argument that, prior to production to the requesting party, redactions of personnel records that are *Brady* material may sometimes be necessary and appropriate, for instance to protect the confidentiality rights of officers whose conduct is not at issue. The precise contours of such redactions and how they may be effectuated are not issues before us in this writ proceeding.

of "all information" that meets *Brady*'s requirements, i.e., that meets the definition for "favorable" and "material" under *Brady*. (*Johnson, supra,* 61 Cal.4th at p. 720; accord, *ALADS, supra,* 8 Cal.5th at p. 43.)

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing the trial court to vacate its order denying Schneider's request for all *Brady* material in the four deputies' personnel files and to conduct a further in camera review of the files to identify which records contain *Brady* material and therefore must be produced to Schneider's counsel.

STONE, J.

We concur:

MARTINEZ, P. J.

FEUER, J.

21